[Civ. No. 18657. First Dist., Div. One. Apr. 9, 1959.]

L. H. PRICE et al., Respondents, v. JOHN D. SLAW-TER, JR., Appellant.

*Assigned by Chairman of Judicial Council.

Di Maria & Daschbach for Appellant.

L. W. Wrixon and James W. Foley for Respondents.

BRAY, Acting P. J.—Petition by appellant John D. Slawter, Jr., for writ of supersedeas and temporary stay. Motion by respondents to dismiss appeal.

### QUESTION PRESENTED

Is the "Interlocutory Judgment" a final judgment and hence appealable?

### RECORD

In an action brought by respondents against defendants to terminate a joint venture of the plaintiffs, defendants John D. Slawter, Jr., and Benjamin Lee Slawter (since deceased and here represented by Frances R. Slawter, administratrix), in the purchase of certain real property, its development as a motel and the sale thereof, the court made findings of fact and conclusions of law and then entered its "Interlocutory Judgment," wherein it found and adjudged that the joint venture should be dissolved and its affairs wound up; that its assets be sold by a commissioner appointed therefor, and the proceeds applied to discharge the liabilities of the venture. Pending the further order of the court the management and control of the joint venture business (the operation of a motel) was left in plaintiffs, subject to the authority of the commissioner to sell it.

The court found that the total value of the assets of the venture was $375,208.79 and its liabilities were $478,368.98, of which sum $186,237.09 was owed plaintiffs for advances. The court ordered that the net proceeds from the sale of the assets should be applied to liabilities (a) to those owing to

creditors other than partners, (b) to those owing to joint venturers other than for capital and profits, (c) to those owing to joint venturers in respect of capital (the court found that appellant had made no contribution to capital), and (d) to those owing to joint venturers in respect of profits. The judgment then provided that the excess, if any ''shall be retained by the . . . Commissioner, subject to the further order of this Court and the rendition of a final judgment herein; . . . 9. That this Court hereby reserves jurisdiction over the dissolution and winding up of said joint venture and authority to make such further orders as may reasonably be required in order to consummate the dissolution and winding up of said joint venture and the rendition of a final Judgment; . . .''

Pursuant to the interlocutory judgment the commissioner noticed for sale the real and personal property of the venture, setting the sale for March 4, 1959. Thereupon petitioner applied to this court for a writ of supersedeas and temporary stay. We granted a stay to await the determination of the application for writ of supersedeas. Thereafter respondents moved to dismiss the appeal upon the ground that the interlocutory judgment is not a final one and therefore not appealable.

### Is the ''Interlocutory Judgment'' Appealable?

It is conceded that unless it is a final judgment under section 963, Code of Civil Procedure, it is not appealable. (See *Bakewell* v. *Bakewell* (1942), 21 Cal.2d 224 [130 P.2d 975].) If it is a final judgment, the appeal would operate as a supersedeas without the necessity of a bond. (Code Civ. Proc., § 949; *Zappettini* v. *Buckles*, 167 Cal. 27 [138 P. 696].) It has been held that whether a judgment is a final one does not depend upon what it is entitled but what it does. (*Brown* v. *Memorial Nat. Home Foundation* (1958), 158 Cal.App.2d 448, 453 [322 P.2d 600].)

The judgment here is practically identical with the one in *Zappettini* v. *Buckles, supra,* 167 Cal. 27, which the court there held was appealable as a final judgment. There, as here, it was an action for dissolution of a partnership, an accounting and distribution of the assets after payment of debts. A receiver appointed by interim order took possession of all the assets. (Here the sale is to be made by a commissioner who has not taken possession of the assets, rather than a receiver, a distinction without a difference.) There judgment was entered determining (as here) the rights of the

452

partners as between themselves, and as here, it ordered (a) dissolution of the partnership, (b) sale of its assets by the receiver, (c) payment of its debts, and distribution of any balance to the partners in the proportions determined by the judgment. The court stated (p. 32): "Notwithstanding the deferring of the fixing of the compensation of the receiver and of the referee, and the reservation of the determination of the question of the debts of the firm to others, the judgment fully and finally determined all the rights of the parties as between themselves." (See also *Brown* v. *Memorial Nat. Home Foundation, supra,* 158 Cal.App.2d 448; *Taylor* v. *Taylor* (1957), 153 Cal.App.2d 144 [314 P.2d 60]; *Peterson* v. *Lightfoot,* 47 Cal.App. 646 [191 P. 48]; *Sondergard* v. *Breaum,* 83 Cal.App. 352 [256 P. 580].)

In determining what matters were decided by the judgment the findings of fact and conclusions of law as well as the judgment itself must be considered. (See 2 Witkin, California Procedure, p. 1831, § 102.)

Respondents point to the well established rule that where anything in the nature of judicial action is necessary to a final determination of the rights of the parties a judgment is interlocutory and not final. (See *Bakewell* v. *Bakewell, supra,* 21 Cal.2d 224, 227; *Taylor* v. *Taylor, supra,* 153 Cal. App.2d 144.) They then contend that there were four matters still awaiting judicial action. First they contend that the findings and judgment did not determine how the net assets, if any, should be divided among the joint venturers. While the findings and judgment could have been clearer written in this respect, nevertheless a study of them shows that the court did make this determination. This fact differentiates this case from *Bakewell* v. *Bakewell, supra,* 21 Cal.2d 224, where the court in its interlocutory decree did not determine the interests of the partners.

Paragraph 12 of the findings incorporates certain provisions of the joint venture agreement, among which is the following: "1. All profits, earnings, losses and liabilities arising from the purchase and development of said real property shall be shared among the parties hereto as follows:" one-quarter to each. While the paragraph in the findings containing this statement relates primarily to the liability of the partners to the repayment to plaintiffs of the amount which the court found was owing from the joint venture to the plaintiffs for money advanced, it is clear from the findings and judgment as a whole that the proportion in which the profits, if any,

from the sale of the assets after making the payments specifically provided to be paid, were to be divided one-quarter to each partner. Paragraph 17 states: "Title to the motel real property owned by the Desert Inn Motel Company Joint Venture is held of record in undivided one-fourth interest in . . ." the parties to this action. Actually respondents make no contention that the profits are to be divided otherwise. They do contend, however, that the estate of Benjamin Lee Slawter has an option of determining just how its one-quarter share shall be determined (this will be discussed hereafter) but they do not contend that the estate's interest is more than a one-quarter share.

Thus, if there are any net proceeds of the sale the division is an arithmetical one and does not require judicial determination.

■ Respondents' second contention that the judgment is not final relates to their contention that under section 15042, Corporations Code, the estate of the deceased partner has a right to elect whether it should receive as its share of the profits, if any, the value of that share at the time of the death of Benjamin with interest, or in lieu of interest the profits attributable to the use of the decedent's right in the property of the joint venture after his death. ■ The estate of a deceased joint venturer cannot be charged with losses accruing after death. (*Harvey* v. *Harvey*, 90 Cal.App.2d 549, 554 [203 P.2d 112].) ■ Assuming that, as contended by plaintiffs, the question of whether a section 15042 election is still available to the estate was reserved (the record fails to disclose this fact—respondents contend that it was not), such a determination of the method of arriving at the proper sum to be paid the estate of a partner (his proportionate share as between himself and the other partners having been determined) is not of such character as to take away the finality for appeal purposes of the judgment rendered.

■ Respondents' third contention is that there must be a further accounting. The judgment was entered December 26, 1958. The accounting determined by the court was as of August 31, 1958, the date selected by the parties as the nearest available date of accounting prior to trial. This further type of accounting is similar to those which in *Zappettini* v. *Buckles, supra,* 167 Cal. 27, and *Brown* v. *Memorial Nat. Home Foundation, supra,* 158 Cal.App.2d 448, were held not to take away the finality aspects as regards appeal of the

judgment theretofore rendered. *Gunder* v. *Gunder* (1929), 208 Cal. 559 [282 P. 794], is not in point. There no accounting whatever had been had. In distinguishing that case from *Zappettini* v. *Buckles, supra,* 167 Cal. 27, and *Clark* v. *Dunnam,* 46 Cal. 204, in both of which cases the interlocutory decrees were held to be final for purposes of appeal, the court, after pointing out that the decree in the Gunder case referred all matters of accounting to a referee appointed for that purpose, said (p. 561): ''In neither of those cases did the decree involve a reference for an accounting, but in each case it ordered a sale of property and specified the distribution to be made of the proceeds.''

Respondents' fourth contention is based upon statements in an affidavit of one of the respondents to the effect that after the conclusion of the trial of this case respondents learned that on July 1, 1958 (a date prior to the trial), a deed of trust on the joint venture property was recorded, executed by appellant and his wife to secure the payment of $35,000 to one Jack Marks; that appellant in court on December 26, 1958, admitted the execution of this instrument and that respondents had never authorized the execution of such deed of trust nor been advised of its existence. Apparently this matter was brought out on a hearing on the findings. (There is nothing in the record on this matter.) No motion was made to reopen the case to determine whether this loan is a partnership liability or chargeable solely to appellant, nor is any mention made of it in the findings or judgment. The finality of the judgment must be determined as of the matters submitted to the court for determination. After-discovered matters cannot make a judgment which is final for purposes of appeal less final.

As the judgment for purposes of appeal is a final one and appealable, and as section 949, Code of Civil Procedure, provides that no bond is required upon appeal from such a judgment, the motion to dismiss the appeal is denied. Let the writ of supersedeas issue restraining the Superior Court of Santa Clara County and the judge thereof, its officers, and the respondents L. H. Price and E. W. Van Buskirk from proceeding with the execution of any portion of the judgment given on December 26, 1958, in said superior court wherein L. H. Price and E. W. Van Buskirk are plaintiffs and John D. Slawter, Jr., and Frances R. Slawter, administratrix of the estate of Benjamin Lee Slawter, sometimes also known

as Ben Lee Slawter, are defendants, so long as there is any appeal pending from said judgment.

Wood (Fred B.), J., and Hanson, J. pro tem.,* concurred.

A petition for a rehearing was denied May 6, 1959, and the opinion was modified to read as printed above.

*Assigned by Chairman of Judicial Council.