AMERICAN BUILDING AND LOAN AS-
SOCIATION, INC., an Alaska
Corporation, Appellant,

v.

STATE of Alaska and A. H. Romick, Com-
missioner of Commerce, State
of Alaska, Appellees.

No. 149.

Supreme Court of Alaska.

Nov. 21, 1962.

Peter J. Kalamarides, John M. Savage,
of Irvine, Clark & Savage, Anchorage, for
appellant.

George N. Hayes, Dist. Atty., Richard A.
Bradley, Asst. Dist. Atty., for appellees.

Before NESBETT, C. J., and DIMOND
and AREND, JJ.

AREND, Justice.

This is an action for a declaratory judgment in which the appellant corporation sought a judicial declaration in the court below that it is not a bank within the meaning of the state statutes governing banking institutions. The trial court held the appellant to be a bank and it is principally from that decision that this appeal is being prosecuted.

Subsidiary to the main issue just mentioned are two other questions which, it will become apparent as we proceed, need to be treated in the course of this opinion: (1) Were the appellees (defendants below) required to set up the "Third Defense" of their answer as a counterclaim in order to be entitled to introduce evidence in support of such "Third Defense"? (2) Since the appellees did not pray for any relief in this action, was the court precluded from entering a declaration of status unfavorable to the appellant?

The events giving rise to the issues presented were as follows: On August 8, 1960, the appellant filed its articles of incorporation under the Alaska Business Corporation Act[1] and received from the state commissioner of revenue a certificate of incorporation under the name of American Savings & Loan Association, Inc. The appellant next applied to the appellee, A. H. Romick, Commissioner of Commerce, for registration as a broker-dealer agent or investment adviser under the Alaska Securities Act of 1959.[2] This application was denied for the reason given by the commissioner that the manner in which the appellant proposed to do business as set forth in its articles of incorporation would be in violation of the Alaska Banking Code[3] in that the appellant would be receiving for deposit moneys which could be withdrawn at any time and, in addition, its name would suggest a savings institution, that is, a bank.[4]

Thereupon the appellant amended its articles of incorporation to change its name to American Building & Loan Association, Inc., and to require six months' notice from the depositor of intention to withdraw his deposit.[5] On January 16, 1961, the commissioner of revenue certified that articles of amendment to the articles of incorporation of the appellant, duly signed and verified pursuant to the provisions odf the Alaska Business Corporation Act, had been received in his office and found to conform to law. However, when the appellant then renewed its application for registration under the Alaska Securities Act of 1959, it was again refused, this time for the stated reason that the corporation was "holding itself out as engaged in a phase of the banking business; that is, of allowing time deposits with the right of withdrawal at the end of six months without having complied with the banking laws of the State of Alaska."

During the month of January 1961, the appellant obtained offices in Anchorage, which it put in readiness for the opening of

1. SLA 1957, ch. 126, as amended by SLA 1957, ch. 168 (§§ 36–2A–1 through 213, ACLA Cum.Supp.1957), and SLA 1960, ch. 25. Section 3 of the 1957 act, as amended, provides that corporations may be organized under the act for any lawful purpose or purposes.

2. SLA 1959, ch. 198 (§§ 35–6–1 through 35, ACLA Cum.Supp.1959).

3. The provisions of the Alaska Banking Code in effect during the litigation with which we are here concerned are set forth in SLA 1951, ch. 129, as amended by SLA 1959, chs. 68, 160, 194 (§§ 34–1–38 through 250, ACLA Cum.Supp. 1957; §§ 34–1–51, 98, 139, 192, ACLA Cum. Supp.1959).

4. Section 3.501 of the Alaska Banking Code (supra, n. 3) reads as follows:
"It shall be unlawful for any unauthorized person to engage in the business of receiving deposits, discounting evidences of indebtedness or receiving money for transmission, to represent that he is, or is acting for, a bank, or to use an artificial or corporate name which purports to be or suggests that it is the name of a bank."

5. In the amended articles of incorporation the notice of intention to withdraw deposits is actually spoken of as a notice of intention to redeem investment shares.

business the following month. On February 9 and 10, 1961, it transacted its first business by way of accepting savings for deposit from several customers and issuing to them passbooks, also referred to in the record as savings books, in which the savings are denominated "investment" and the withdrawals from savings, "refund." The next day, February 11, the appellant and its officers were arrested on charges of conducting the business of a bank without state approval.

On February 14, 1961, the appellant filed its complaint in this action asking the superior court to declare that the banking laws of Alaska are inapplicable to it. The appellees filed an answer, admitting or denying the several allegations of the complaint, and by way of a "Third Defense" pleaded as follows:

"Defendants allege that on February 9 and 10, 1961, American Building and Loan Association, Inc. received cash deposits from various members of the public at large and did then and there advertise the corporation as a depository for funds from members of the general public and did advertise that such funds would be insured by United States Government Agency and did inform various depositors that their deposits would be available for withdrawal upon demand."

The answer contained no prayer for relief.

▆▆▆ At the trial the appellees, over objection by the appellant, were permitted to introduce evidence in support of the allegations of their "Third Defense." This the

appellant claims was error as the evidence was irrelevant and immaterial and beyond the scope of the pleadings. It seems to be the appellant's contention that the evidence objected to would have been admissible only if the appellees had made their "Third Defense" a "counterclaim" to have the trial court determine that American Building & Loan Association was a bank. In other words, the appellant is saying that its acts and those of its agents outside the scope of the facts contained in its articles of incorporation as set forth in the complaint were irrelevant and immaterial to the issue before the court.

The appellant comes forth with no authority in support of its position and we have not been able to find any. Quite contrary to the appellant's argument our rules of civil procedure provide:

"The procedure for obtaining a declaratory judgment pursuant to statute

(Sec. 17(1) (b), Ch. 50 SLA 1959) shall be in accordance with these rules * * *."[6]

Then in Civ.R. 8(b) we read that "a party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." This the appellees did and, since their pleading was not attacked by motion to strike as allowed by Civ.R. 12(f),[7] the issues were properly joined by the matters set forth in the complaint and answer and all that remained was for the trial court to hear the evidence[8] and render its decision.[9]

6. Civ.R. 57(a).

7. Civ.R. 12(f) states:
"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

8. "* * * while there was some uncertainty at first as to whether the courts had power to grant declaratory relief where disputed facts were involved, practically all the courts now regard the presence of disputed facts as no bar to a declaratory judgment action." Annot. 13 A.L.R.2d 777, 778 (1950). See also Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242, 57 S.Ct. 461, 81 L.Ed. 617, 622, 108 A.L.R. 1000 (1937).

9. It is to be noted that there are in the record before us two written stipulations

But, says the appellant, it was error for the court, after hearing the evidence, to declare the American Building & Loan Association to be subject to the banking laws of the State of Alaska since to do so was to grant relief to the appellees rather than to the appellant and that in the face of the fact that appellees had not prayed for any relief whatsoever.

 The appellant believes that because of the failure of the appellees to demand any relief in this case it was entitled either to a judgment in its favor or to have its complaint dismissed. Such is not the law in declaratory judgment actions. In some states, as in Oregon and Colorado for example, it is provided by statute that the declaratory judgment may be affirmative or negative in form and effect.[10] We see no reason why the rule should be any different in the absence of a statute. Where upon the merits of the controversy the plaintiff is not entitled to a favorable declaration, the court should render a judgment embodying such determination and should not merely dismiss the action.[11] In this way the purpose of a declaratory judgment will be realized, namely to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." [12]

This brings us to the principal question for review as embodied in the appellant's charge that the lower court erred as a matter of law in holding that the appellant was a bank and did the business of banking within the provisions of chapter 129, SLA 1951, as amended.

 The trial court limited its determination of the status of American Building & Loan Association to the period February 9 and 10, 1961. While the judgment states simply "that plaintiff [appellant] is subject to the banking laws of the State of Alaska, Ch. 129, Session Laws of Alaska, 1951, as amended," we may look to the court's findings of fact and conclusions of law for an interpretation of the judgment.[13] The pertinent findings of the trial court on the point in question were the following:

"4. That plaintiff engaged in business from February 9, 1961, until February 11, 1961, during which time monies were received in the course of business from at least three members of the general public.

\* \* \* \* \* \*

"6. That plaintiff, on February 9 and 10, 1961, received cash deposits from various members of the public, and agents and officers of plaintiff did inform various depositors that deposits would be available for withdrawal upon demand and did, by various words and acts of its agents and officers, hold itself out as a banking institution."

From the facts found the court concluded as a matter of law:

"2. That plaintiff has and did, during the period it was open for business,

entered into by the parties to the effect that certain absent witnesses of the appellees if present at the trial would have testified to facts substantially as set forth in the "Third Defense." During the trial, at the appellees' request and without objection by the appellant, these stipulations were read by the court and filed in the case. So, even if we were to disregard the oral and documentary testimony of the appellees received over objection at the trial, the stipulated testimony would still have to be considered.

10. Dannells v. United States Nat. Bank of Portland, 172 Or. 213, 138 P.2d 220, 232 (1943); Bennett's, Inc. v. Krogh, 115 Colo. 18, 168 P.2d 554, 164 A.L.R. 1010 (1946).

11. Frazier v. City of Chattanooga, 156 Tenn. 346, 1 S.W.2d 786 (1928); Northwestern Nat. Ins. Co. v. Freedy, 201 Wis. 51, 227 N.W. 952 (1929).

12. The purpose of a declaratory judgment as announced in the text above is set forth in 1 Anderson, Declaratory Judgments § 3 at 12 (2 ed. 1951).

13. Armstrong v. De Forest Radio Tel. & Tel. Co., 10 F.2d 727, 728 (2d Cir.), cert. denied, 270 U.S. 663, 46 S.Ct. 471, 70 L. Ed. 787 (1926); Price v. Slawter, 169 Cal.App.2d 448, 337 P.2d 914, 917 (1959); Miller v. Madigan, 90 Okl. 17, 215 P. 742 (1923).

operate a banking institution subject to the Alaska Banking Act, Chapter 129, Session Laws of Alaska, 1951, as amended." [14]

██ Neither of the parties is challenging the limited determination so made; and, therefore, we restrict our consideration to the same time limitation in this opinion. [15]

Chapter 129 SLA 1951, known as the Alaska Banking Code, [16] after defining "Bank" as "any person doing a banking business," [17] goes on to say that

" * * * unless the context otherwise requires * * * 'Banking' means the negotiation for, and the discounting of promissory notes, drafts, bills of exchange and other evidences of indebtedness; receiving deposits, selling and buying exchange, coin and bullion, and loaning money on personal, real and other security, and other kindred financial operations." [18]

██ The appellant contends that the lower court erred as a matter of law in construing chapter 129 as including building and loan associations under the definition of banks and banking. We do not think so,

and hold that American Building & Loan Association was a financial operation akin to banking.

It is true, as pointed out by the appellant in its brief, that there are many organizational and operational differences between the usual banking institution and a savings and loan association, but there are also similarities, as established by the evidence in the instant case, such as: (1) the receiving of money deposits (referred to by the appellant as "investments") from the general public and the permitting of withdrawals therefrom, whether immediately or upon six months' notice; (2) the payment of interest (denominated "dividends" by the appellant) by the institution upon funds deposited with it; and (3) the insurance of such deposits by an agency of the federal government.

██ It must have been for the purpose of protecting the public in its financial dealings with institutions such as the appellant [19] and with full knowledge that there was no other special statutory regulation of the financial business of building and loan associations in existence at the time that our legislature extended the Alaska Banking Code to in-

---

14. The intent of the trial court to limit its declaration of status to the period February 9 and 10, 1961 is also apparent from the following statement contained in the court's oral decision:

" * * * It is therefore the declaration of the Court that the particular institution which is the party plaintiff, has and did for the two days of its operation operate as a banking institution on [sic] the General Banking Laws of the State of Alaska. And such is the declaratory judgment of the Court."

15. See Connecticut Importing Co. v. Perkins, 35 F.Supp. 414 (D.Conn.1940), in which it was held that in an action to determine an employer's rights under the Fair Labor Standards Act such remedy as the employer is entitled to at the hands of the court should not be withheld because it would not be complete.

16. See n. 3, supra. There have been some amendments of the Alaska Banking Code

since its enactment in 1951 but none that bear upon this case.

17. Section 34–1–39, ACLA Cum.Supp.1957.

18. Section 34–1–40, ACLA Cum.Supp.1957.

19. It was the opinion of the trial court, too, that "the business of banking, the business of handling people's money, savings perhaps over a lifetime are important to them and they must be properly regulated and [sic] the proper safeguards so that individuals are not confused or influenced into investing money or depositing money in institutions under circumstances that do not at least to a fair extent, insure them and give them a fair chance to receive not only a return on their investment but a safely operated and conducted depository for these funds."

clude in the definition of banking "other kindred financial operations." [20]

Finding no error, we affirm the judgment of the trial court.

20. We are cognizant of the fact that the Alaska Savings Association Act, SLA 1961, ch. 49, which was enacted after the commencement of this action and became effective on April 6, 1961, provides in § 46(o) thereof that "all persons accepting moneys from the public and engaged in home financing * * * and every corporation heretofore incorporated under the statutes of this state which has for its purpose the promotion of thrift and the financing of homes * * * by whatever name known, shall at the time this Act becomes effective be subject to the provisions of this Act * * *."

The trial court was not asked to, nor did it need to, declare the rights of the parties as they may exist under the Alaska Savings Association Act. See Tennessee Coal Iron & R. Co. v. Muscoda Local 123, 137 F.2d 176, 180 (5th Cir., 1943), aff'd 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944).