[No. D052502. Fourth Dist., Div. One. Apr. 7, 2009.]

In re the Marriage of RICHARD D. and CLAIRE L. CORONA.
RICHARD D. CORONA, Appellant, v.
CLAIRE L. CORONA, Respondent.

## Counsel

Richard D. Corona, in pro. per.; and Arnold Neves, Jr., for Appellant.

Basie & Fritz, Jeffrey C. Fritz; Vaughn & Vaughn and Donald A. Vaughn for Respondent.

## Opinion

**O'ROURKE, J.**—Richard D. Corona appeals from postjudgment orders (1) confirming an arbitration award providing his former spouse Claire L. Corona[1] with certain distributions and sales proceeds from a formerly community property asset; (2) ordering him to pay $36,208 plus interest as his share of Claire's 2005 federal and state income tax obligations; and (3) imposing $5,000 in sanctions for taking an unreasonable position in connection with Claire's request for unpaid support in the form of specified housing costs. With respect to the order confirming arbitration, Richard contends the arbitrator impermissibly modified the parties' final judgment in their dissolution action and thus exceeded his authority by, inter alia, forcing a liquidation of Claire's interest in a general partnership in lieu of continued spousal support. Richard further contends the court erred by requiring him to pay an unnecessary and excess amount of Claire's 2005 tax liability due to

---

[1] For the sake of clarity and without intending any disrespect, we hereafter refer to the parties by their first names. Claire has remarried and at times she is referred to in the record by her married name, Lombardo.

her chosen tax filing status. Finally, Richard contends the court abused its discretion by ordering him to pay sanctions.

We grant Claire's motion to dismiss Richard's appeal from the family court's order confirming the arbitration award because the order is interlocutory. Otherwise, we affirm the trial court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, in connection with the dissolution of their marriage, Richard and Claire entered into a marital settlement agreement (MSA), which was incorporated into a supplemental judgment. Among other things, the MSA addressed the parties' 90 percent community interest in an office complex known as Mission Grove Properties (the Mission property), awarding Richard a separate interest of 67.5 percent and Claire a separate interest of 22.5 percent to be held as tenants in common. The MSA also sets out Richard's spousal support obligations, which "shall terminate upon the death of Husband or the death of Wife, whichever occurs first, but shall not terminate upon Wife's remarriage."

Under the MSA, Richard is required to pay Claire $8,500 per month for support and maintenance commencing September 1, 1995, through and until December 31, 2006. Additionally, the MSA obligates Richard to pay a portion of Claire's income taxes: he "shall pay a sum equal to one-half (1/2) of Wife's federal and state income tax obligation directly attributable to Wife's receipt of spousal support paid by Husband in the tax years 1996 through 2006, such income tax payable either to Wife or on behalf of Wife, at Husband's election, which shall be as and for non-taxable/non-deductible spousal support."

The MSA addresses Claire's support after December 31, 2006, as follows: "Commencing January 1, 2007, and continuing each month thereafter, Husband shall only pay support and maintenance to Wife in a sum as is necessary, if at all, to assure that Wife's monthly income, including that which Wife derives from her twenty-two and one-half percent (22.5%) interest in Mission Grove Properties . . . , at least equals the sum of $5,000 plus Wife's housing costs for the Renaissance Residence [Claire's condominium] as those housing costs are hereinabove defined."[2] Claire's "housing

---

[2] That provision continues: "Thus in and after January 2007, Wife will only be entitled to receive support and maintenance from Husband in such months, if any, that Wife fails to derive monthly income from her twenty-two and one-half percent (22.5%) interest in Mission Grove Properties which equals or exceeds the total of $5,000.00 plus her housing costs for the Renaissance Residence as those costs are hereinabove defined. In such months, if any, such support and maintenance, shall be limited in amount to the sum necessary to supplement

costs" were defined in the MSA as "mortgage principal, mortgage interest, property taxes, and homeowner's fees on the Renaissance Residence." With respect to the provision for support after December 2006, the MSA states such support "is based upon the fact that Wife will have no financial responsibility for the children of the parties, who will be well beyond minority and upon the fact that this Section provides for the continuity of spousal support payable to Wife irrespective of her remarriage."

## A. *The Arbitration*

Disputes arose between the parties, and in 2002 they agreed to submit various issues to binding arbitration before an identified arbitrator. That arbitrator was replaced in November 2005 and, following hearings, the arbitrator in May 2007 issued an interim arbitration award relating to Claire's entitlement to distributions or proceeds from a 1999 refinance and 2004 sale of the Mission property. The arbitrator declined to award Claire a conveyance of title to the Mission property. However, he found she was entitled to a 25 percent share of net distributions made to Richard or for his benefit from the 1999 refinancing. As to that award, the arbitrator stated, "The amount, if any, to be distributed to [Claire] would have to be based upon an accounting, which was not stipulated to be before the undersigned." The arbitrator further determined that if distributions from the 1999 refinancing were made to Richard, Claire was entitled to a distribution equaling 25 percent of Richard's original 90 percent interest in the net sale proceeds of the Mission property. The arbitrator concluded that by stipulation and consent, Claire's distribution from the net sale proceeds would terminate her spousal support derived from the net rental income provision in the MSA. The arbitrator again stated that the amount of such proceeds would have to be based on a later accounting that he was not authorized to conduct.

Claire thereafter petitioned to confirm and enter judgment on the interim arbitration award. Richard responded by claiming the arbitrator had exceeded his power and that the award constituted a material modification of the MSA and final judgment of dissolution. He argued the MSA's express terms prevented the arbitrator from implying new, material terms liquidating Claire's interest in the Mission property partnership or awarding her distributions generated in 1999, because the MSA stated she would not receive distributions from that property until 2007. According to Richard, the award undermined the MSA by modifying its spousal support provisions and

---

Wife's income from Mission Grove Properties such that Wife's income totals $5,000.00 plus Wife's housing costs for the Renaissance Residence as those costs are hereinabove defined."

liquidating Claire's interest as of 2004 without terminating (or crediting) support paid by Richard after that time. Richard asked the court to deny Claire's petition and vacate the award.

In August 2007, the arbitrator issued a final award addressing the bifurcated issue of attorney fees and costs. Claire thereafter filed an amended petition to confirm the final award as well as a motion for an accounting to establish the amount of the arbitrator's award and for an order that Richard pay certain income taxes, arrears and sanctions that were the subject of a prior court ruling (discussed *post*).

B. *Orders to Show Cause Regarding Claire's 2005 Income Taxes and Housing Costs*

While the arbitration proceedings were pending, Claire in April 2006 filed an order to show cause asking the trial court to determine Richard's share of her 2005 income tax liability and appoint a special master to make a recommendation on other "extras" assertedly due her under the MSA, including payments for her telephone long-distance bills and automobile insurance. Claire maintained her 2005 income tax liability was more complex than in prior years because she had been awarded arrears and interest by the arbitrator, and she presented a letter from her accountant, James Helfand, explaining that she had incurred $80,094 in tax liability, of which $40,047 was Richard's share. Richard opposed the motion, asserting that Claire's claim was based on an unfiled tax return as well as hearsay statements, unqualified legal opinions, and incompetent conclusions from Helfand. In part, he argued he was entitled to the full benefit of Claire's Schedule A itemized deductions (Form 1040, Schedule A) in calculating his portion of her tax liability. In an accompanying declaration, Richard averred that Claire had asked him to effectively pay taxes on substantial nonspousal support income; that his calculation of taxes owed on "basic spousal support income" was $12,935.50, which he had paid to Claire by a check for $8,734.22 and application of $4,201.28 in debt he claimed Claire owed to him. Claire responded in part with objections to Richard's declaration. She argued she was entitled to $40,047 from Richard for her 2005 income tax liability based on the unambiguous terms of their integrated MSA, which was drafted by Richard, then a practicing attorney.

In May 2006, the family court judge (the Hon. Thomas Hendrix) appointed a special master, set the matter of Claire's 2005 income taxes for an evidentiary hearing, and ordered Richard to pay an approximate disputed

amount into an interest-bearing trust account. Thereafter, in August 2006, Claire filed an order to show cause requesting an order that Richard pay interest on his unpaid portion of her 2005 income tax obligation. She submitted another declaration from accountant Helfand who set forth his criticisms of Richard's calculation of Claire's 2005 income tax liability, as well as her own declaration stating she had not overpaid her 2005 income taxes.

Following the parties' evidentiary hearing with the special master, Richard filed supplemental points and authorities challenging Claire's calculation of her 2005 tax liability under her chosen tax filing status ("married filing separately"), arguing that her filing status unnecessarily and substantially increased her tax obligation. He maintained Claire had a duty to mitigate and minimize her tax liability under the covenant of good faith and fair dealing and the express terms of the MSA and that the amount she could recover from him was limited to that which a reasonable person under the same circumstances would have incurred. Richard asked the court to adopt his methodology that would calculate her 2005 income tax liability to be $16,280 under a "married, filing jointly" status.

At about the same time Richard raised the issue of Claire's tax filing status, Claire moved to establish support arrears owed to her in the amount of $1,977, which she asserted represented one-half of her actual housing costs. She argued the MSA required Richard to pay her the greater of 25 percent of the net rental income from the Mission property or the guaranteed sum of $5,000 per month plus her housing costs. Claire stated Richard had paid her only $6,977, which was $5,000 plus one-half of her housing costs, and had refused to pay the remaining housing costs on grounds her current spouse had paid that expense. She asked the family court to award her attorney fees and costs for Richard's conduct in forcing her to file the motion, as well as sanctions on grounds that as an attorney and drafter of the agreement Richard was well aware of his obligations.

On July 16, 2007, the family court judge (the Hon. Lisa Foster) considered arguments on Claire's claim as to her 2005 income taxes and motion for housing costs arrears, as well as Claire's request for an order awarding her attorney fees and sanctions in connection with her requests. Finding it could not dictate how Claire could designate her tax filing status, the court ruled that Richard's obligation under the most fair method of calculating Claire's 2005 income tax liability would be to pay one-half of $72,416, which was $36,208. Applying Richard's prior payments, it found Richard was to pay an

arrearage of $27,473.78 plus interest. As for Claire's housing costs, the court found Richard's arrearage to be $11,778.36, based on its view that Richard's obligation as set out in the MSA was not contingent on Claire's remarriage or on any other person's paying her expenses. The family court reserved the issue of attorney fees, but found based on the MSA's plain language that Richard's position and his unilateral action with respect to Claire's housing costs was unreasonable and taken in bad faith. It ordered Richard to pay $5,000 in sanctions with respect to that issue.

In November 2007, Richard filed an order to show cause asking the family court to clarify its prior orders and to determine certain credits he claimed were due him for overpaid spousal support. He stated that at the time of its ruling, the court was unaware that in 1999 Claire had refinanced her residence, increasing the principal amount of the loan by $120,000 to pay for new vehicles, and also that her new husband was paying one-half of the mortgage. He asked that his obligation be reduced by 25 percent and then halved based on Claire's actual monthly mortgage expense. Richard further argued that the order awarding $5,000 in sanctions was inappropriate because his adjustments to his obligations were based on his good faith belief about the MSA's requirements. As for the order pertaining to Claire's 2005 income taxes, Richard expressed confusion as to the court's calculation and stated his belief that its determination was inappropriate and overstated the amount of taxes based on the evidence. On that issue, he asked the court for "clarification as to how the Court reached its conclusion . . . ."

## C. *Trial Court Rulings*

On December 6, 2007, the family court filed its findings and order after hearing on the matters considered on July 16, 2007, including its order that Richard pay $5,000 to Claire in sanctions.

The next day, the family court heard Claire's petitions to confirm the arbitration award and motion for accounting, as well as Claire's requests for orders directing Richard to pay the housing cost and income tax arrearages. It granted Claire's motion to confirm the award. The court observed that there was no dispute that the arbitrator had resolved the questions put before him by the parties, and it found the matter did not present a situation of the arbitrator exceeding his power. Having made those findings, the court ruled under *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] it was not authorized to review the arbitrator's determinations in fashioning a remedy. It also ordered the accounting contemplated by the

arbitrator in the award, appointing the arbitrator as a special master to supervise the accounting.

As for the issues of Claire's 2005 income taxes and the housing costs, the court stated it would consider Richard's motion for reconsideration of those orders. It took Claire's request for attorney fees and Richard's request for certain credits under submission. Thereafter, Richard moved to have the family court consider his November 2007 motion for clarification in which he raised the issues of Claire's joint loan obligations with her new husband and the refinance of her residence. He asked the court to alternatively treat the motion as one for reconsideration and a new motion for a determination of Claire's housing costs from July 2007 forward.

The court denied Richard's reconsideration motion, finding he had not established his alleged new facts could not have been discovered had he exercised diligence. With respect to Richard's request that the court rule on his November 2007 clarification motion, the court stated it had implicitly denied that motion when it signed the findings and order after the July 16, 2007 hearing. It dated those findings and order after hearing December 7, 2007, nunc pro tunc, and denied Richard's motion for clarification.

Richard appeals from the court's December 7, 2007 orders.

## DISCUSSION

### I. *Motion to Dismiss Appeal from Order Confirming Arbitration Award*

Before filing her respondent's brief in this matter, Claire moved to dismiss Richard's appeal from the trial court's postjudgment order confirming the arbitration award. She argued this court lacks jurisdiction due to the interlocutory nature of the arbitrator's decision: that due to the order for an accounting by a special master and the fact further judicial action is necessary to finally determine the monetary amounts Richard owes her, the postjudgment order is not appealable. Additionally, Claire contended the judgment underlying the postjudgment order is not appealable—a prerequisite for appealability of the postjudgment order—because it was entered on the parties' stipulation. At oral argument, Claire purported to withdraw the motion, asking us to consider Richard's contentions about the family court's order on the merits.

██ We will nevertheless consider the motion to dismiss. Parties cannot confer jurisdiction on this court if the family court's order is interlocutory and not appealable. Appealability of the order "goes to our jurisdiction, [leaving us] dutybound to consider it on our own motion" (*Olson v. Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720]) and dismiss on our own motion if necessary (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349]). The fact Claire no longer "disputes" appealability does not matter, for jurisdiction cannot be conferred "by the consent or stipulation of the parties, estoppel, or waiver" (*Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423]; *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 114 [95 Cal.Rptr.2d 113]) or by the "relative merits of an appeal" (*In re Frederick E. H.* (1985) 169 Cal.App.3d 344, 348 [215 Cal.Rptr. 171]).

██ Our focus is on whether the family court's postjudgment order confirming the arbitration award—not the arbitrator's decision—is interlocutory or final for purposes of this appeal.[3] "In 'determining whether a particular decree is essentially interlocutory and nonappealable, or whether it is final and appealable . . . [i]t is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " (*Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101–1102 [39 Cal.Rptr.2d 737], quoting *Lyon v. Goss* (1942) 19 Cal.2d 659, 669–670 [123 P.2d 11]; see also *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 699 [107 Cal.Rptr.2d 149, 23 P.3d 43].) A judgment [or order] is final " ' "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." ' " (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781];

---

[3] Orders confirming an arbitration award are not appealable; rather, an appeal lies from the judgment entered on the award. (*Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 326–327 [27 Cal.Rptr.3d 10].) However, here, the arbitration was intended to enforce the parties' dissolution judgment, and arguably is appealable under Code of Civil Procedure section 1294, subdivision (e) as a "special order after final judgment." Assuming the order in this case falls into that category, the postjudgment order nevertheless requires finality. (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 803 [70 Cal.Rptr.3d 434] ["Under section 1294, appealable arbitration orders also require finality and this requirement is consistent with the language of section 1294 and the general prohibition of appeals from interlocutory nonfinal judgments in section 904.1, subdivision (a)."].)

see also Code Civ. Proc., § 577 [a judgment is the final determination of the rights of the parties in an action or proceeding].) " '[W]here anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory' " and not appealable. (*Olson v. Cory, supra*, 35 Cal.3d at p. 399.)

■ With regard to postjudgment orders, Code of Civil Procedure section 904.1, subdivision (a) provides in part: "An appeal, other than in a limited civil case, may be taken from any of the following: [¶] (1) From a judgment . . . . [¶] (2) From an order made after a judgment made appealable by paragraph (1)." As Claire points out, not every postjudgment order that follows a final judgment is appealable: "Despite the inclusive language of Code of Civil Procedure section 904.1, subdivision (b), not every postjudgment order that follows a final appealable judgment is appealable. To be appealable, a postjudgment order must satisfy two additional requirements. . . . [¶] The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment. . . . [¶] The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–652 [25 Cal.Rptr.2d 109, 863 P.2d 179] (*Lakin*); see also *Olson v. Cory, supra*, 35 Cal.3d at p. 400; *Roden v. AmerisourceBergen Corp.* (2005) 130 Cal.App.4th 211, 215–216 [29 Cal.Rptr.3d 810].) *Lakin* held a postjudgment order denying an award of attorney fees was appealable because it satisfied those requirements: it "affects the judgment or relates to its enforcement because it determines the rights and liabilities of the parties arising from the judgment, is not preliminary to later proceedings, and will not become subject to appeal after some future judgment." (*Lakin*, at p. 656.)

Two Courts of Appeal have applied *Lakin*'s principles to postjudgment marital dissolution proceedings, each concluding both postjudgment orders were interlocutory and not appealable because they were preliminary or preparatory to later proceedings. (*In re Marriage of Levine* (1994) 28 Cal.App.4th 585, 589 [33 Cal.Rptr.2d 559]; *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403 [124 Cal.Rptr.2d 719].) In *Levine*, the court dismissed an appeal from a postjudgment order relating to the sale of certain assets that was to result in a guaranteed receipt of a specified sum of money. (*Levine*, at p. 586.) Following disputes and the filing of an order to show cause, the family court entered an order in part specifying how the parties were to procedurally resolve additional disputes and reserving the issue of attorney fees and costs. (*Id.* at p. 587.) The Court of Appeal held the order was not

sufficiently final, which was an "essential element of an appealable postjudgment order" under *Lakin*. (*Id.* at p. 589.)

█ In *Ellis*, the Court of Appeal found not appealable a postjudgment order finding a community property interest in health insurance subsidy benefits. (*In re Marriage of Ellis, supra,* 101 Cal.App.4th at pp. 402–403.) Relying on *Lakin, supra,* 6 Cal.4th 644 and *In re Levine, supra,* 28 Cal.App.4th 585, the appellate court observed some postjudgment orders are not appealable because, " 'although following an earlier judgment, [they] are more accurately understood as being preliminary to a later judgment, at which time they will become ripe for appeal. [¶] . . . [¶] . . . [Such postjudgment orders lack] finality in that they [are] also preparatory to later proceedings.' " (*Ellis,* 101 Cal.App.4th at p. 403, quoting *Lakin,* at pp. 652–653.) In *Ellis,* the family court's order determined that the court had authority to evaluate and divide the medical subsidy, but it was "only preliminary to *actually* doing so." (*Ellis,* at p. 403.) Under those circumstances, the appellate court dismissed the appeal as from a nonappealable order. (*Id.* at pp. 403–404.)

█ Here, as Claire points out, in its postjudgment order the family court did not simply confirm the arbitrator's award, it also appointed a retired superior court judge (the Hon. Robert May) as a "special referee . . . to select the forensic accountant to perform the accounting pursuant to the Final Arbitration Award and to oversee the accounting process." The order continues: "If Judge May is unable or unwilling to accept the appointment, the parties shall meet and confer to select a CPA to perform the accounting. The parties may return to the court on an ex parte basis to have a forensic accountant appointed, if needed." The record indicates that at Richard's request, the family court expressly designated the appointment of Judge May as a special reference. (See Code Civ. Proc., § 639; *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 175–176 [110 Cal.Rptr.2d 111]; *Estate of Beard* (1999) 71 Cal.App.4th 753, 777 [84 Cal.Rptr.2d 276].) When a reference is special, "the referee's decision does not become the decision of the court until it is adopted by the judge." (*Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 450 [27 Cal.Rptr.3d 150], citing Code Civ. Proc., § 644, subd. (b); see also *Estate of Beard,* at p. 777 [referee's factual findings under a special reference are advisory recommendations only and do not become binding unless adopted by the court].) The family court's order plainly contemplates further judicial proceedings to adopt the referee's findings following the accounting to determine Claire's distributions from the refinance and sale of the Mission property. Because the order is preliminary to further proceedings and interlocutory under *Lakin*'s principles, Richard's appeal from that order must be dismissed.

■ *Price v. Slawter* (1959) 169 Cal.App.2d 448 [337 P.2d 914] and *Taylor v. Taylor* (1957) 153 Cal.App.2d 144 [314 P.2d 60], relied upon by Richard, do not convince us otherwise. The authority on which these holdings are based, *Zappettini v. Buckles* (1914) 167 Cal. 27 [138 P. 696], has been impliedly overruled by subsequent California Supreme Court decisions. (See *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 963–966 [231 Cal.Rptr. 241] [discussing conflict at length]; *Kinsmith Financial Corp. v. Gilroy* (2003) 105 Cal.App.4th 447, 455 [129 Cal.Rptr.2d 478].) These later decisions of the California Supreme Court (among others, *Gunder v. Gunder* (1929) 208 Cal. 559, 561 [282 P. 794]; *Di Blasi v. Di Blasi* (1930) 209 Cal. 753, 754 [290 P. 7]; *Middleton v. Finney* (1931) 214 Cal. 523, 525–526 [6 P.2d 938]; *Hollar v. Saline Products, Inc.* (1935) 3 Cal.2d 80, 81–82 [43 P.2d 273]) indicate it is now settled that a decree that determines the basic issues between the parties and orders an accounting is not appealable. (*Kinoshita, supra,* 186 Cal.App.3d at pp. 963–966.) Further, neither *Price* nor *Taylor* involves the appointment of a special referee, which is the circumstance creating a need for further judicial action. (See *Gunder, supra,* 208 Cal. at p. 561 [distinguishing *Zappettini* and another case and pointing out "[i]n neither of those cases did the decree involve a reference for an accounting, but in each case it ordered a sale of property and specified the distribution to be made of the proceeds. There was therefore in those cases no further judicial action required on the part of the court to adjudicate finally the rights of the parties."].)

Finally, the policies underlying the final judgment rule—avoiding piece-meal dispositions and multiple appeals, reducing uncertainty or delay in the trial court, and obtaining a single complete and final resolution of the issues presented—are best served by denying appellate jurisdiction under the present circumstances. (Accord, *Kinoshita v. Horio, supra,* 186 Cal.App.3d at pp. 966–968.) Based on the foregoing, we must dismiss Richard's appeal as to the family court's order confirming the arbitration award.

## II. *Order Regarding Claire's 2005 Income Taxes*

Richard asks us to set aside the family court's order that he pay $36,208 as his share of Claire's 2005 income tax obligation. Without explaining the appellate standard of review, he reiterates the arguments he made to the family court below: that under the implied covenant of good faith and fair dealing and Civil Code sections 1655 and 1656, Claire was obligated to act reasonably and not impose excess liability by her selection of tax filing status, and she had a duty to mitigate and minimize the amount of her tax liability. Richard argues Claire "should not be able to recover any portion of

tax liability that she could have reasonably foreseen and avoided by taking reasonable efforts and steps without incurring undue expense."[4]

Claire responds that the relevant questions on appeal are first, whether her chosen filing status was permissible under the MSA, and second, whether the method of determining Richard's tax liability was proper under the MSA. She argues her selection of her "married filing separately" tax filing status was not unreasonable since the MSA does not dictate how she was to choose her filing status and that Civil Code sections 1655 and 1656 are inapplicable in the absence of evidence that the MSA cannot be carried out without some implied provision mandating her tax filing status. She maintains Richard has not demonstrated with any authority that she had a duty to choose a tax filing status that would result in the smallest tax liability for him.

■ It is a well-settled proposition that the law implies in every contract a covenant of good faith and fair dealing. (See *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082]; *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 937 [16 Cal.Rptr.3d 849, 94 P.3d 1055].) The covenant creates a duty of good faith and fair dealing in a contract's performance and enforcement. (*Jonathan Neil*, at p. 937.) " 'As to the scope of the covenant, "[t]he precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." [Citation.] Initially, the concept of a duty of good faith developed in contract law as "a kind of 'safety valve' to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language." [Citation.] As a contract concept, breach of the duty led to imposition of contract damages determined by the nature of the breach and standard contract principles.' " (*Ibid.*)

■ In this case, however, the parties' MSA was incorporated into their judgment of dissolution. The significance of such incorporation was explained in *In re Marriage of Jones* (1987) 195 Cal.App.3d 1097, 1104 [241 Cal.Rptr. 231]: "A merged ' ". . . separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical." ' [Citation.] 'Merger, then, replaces the obligations of the contract with those of the decree [and] the merger itself has extinguished the contract's

---

[4] In making these arguments, Richard references several exhibits—Claire's 2005 income tax return, tax returns that Richard had submitted to the special master, and some unidentified communication from the special master—that are neither included in the record nor before this court via a notice of lodgment. We disregard Richard's factual assertions based on matters that are not contained in the record. (See Cal. Rules of Court, rule 8.204(a)(2)(C); *McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 [63 Cal.Rptr.3d 615]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].)

obligations.' " (See also *Zastrow v. Zastrow* (1976) 61 Cal.App.3d 710, 713–714 [132 Cal.Rptr. 536].)

The question of whether a marital settlement agreement is merged into the divorce decree is one of law. (*Mitchell v. Marklund* (1965) 238 Cal.App.2d 398, 403 [47 Cal.Rptr. 756].) The MSA and judgment here satisfy the criteria for a merger. The MSA is attached to and explicitly incorporated by reference in the supplemental judgment, which states: "The marital settlement agreement executed by the parties herein, the original of which is attached hereto, is incorporated into and made a part of the judgment of dissolution of marriage filed and entered with this court on August 16, 1995, as though set forth in full therein." (Some capitalization omitted.) Because the MSA was merged into the judgment, its obligations are not those imposed by contract and not enforceable as such. (*Hough v. Hough* (1945) 26 Cal.2d 605, 609–610 [160 P.2d 15]; see also *Westinghouse Electric Corp. v. Newman & Holtzinger* (1995) 39 Cal.App.4th 1194, 1205 [46 Cal.Rptr.2d 151] [once an agreement is merged into the court's order, neither party has a right of action based on the agreement because the obligations imposed are not imposed by the agreement but by the order and are enforceable as such through contempt and other sanctions available to the court].) Under these circumstances, we find no basis to imply a covenant of good faith and fair dealing—and corresponding duty—into the terms of the parties' merged judgment. Nor has Richard provided us with authority implying a covenant in these circumstances.

█ Our conclusion is different with respect to the potential application of Civil Code sections 1655 and 1656, as those provisions are rules of contract interpretation. (But see *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 852 [89 Cal.Rptr.2d 540] [" 'The supplying of an omitted term is not technically interpretation, but the two are closely related; courts often speak of an "implied" term. . . .' "], quoting Rest.2d Contracts, § 204, com. a, p. 97.) Statutory rules of construction and interpretation are generally applicable to marital settlement agreements that are incorporated into a dissolution judgment. (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 [64 Cal.Rptr.2d 766].) Civil Code section 1655 provides: "Stipulations which are necessary to make a contract reasonable . . . are implied, in respect to matters concerning which the contract manifests no contrary intention." Civil Code section 1656 provides in part: "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded."

As Claire acknowledges, nothing in the MSA mandates that Claire use any particular tax filing status when preparing her tax returns or more specifically, use a tax filing status that would result in the lowest income tax payment. The

agreement is silent on that precise question. There being no express term on that point, the question at hand is whether such a term may be implied without altering or varying the terms of the agreement and whether the circumstances give rise to other conditions permitting a court to imply such terms. (*Lambros v. Metropolitan Life Ins. Co.* (2003) 111 Cal.App.4th 43, 53–54 [3 Cal.Rptr.3d 320]; *Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 545 [54 Cal.Rptr.2d 128] (*Frankel*).)

 Implied terms are not favored in the law, and should be read into contracts only upon grounds of obvious necessity. (*Frankel, supra,* 46 Cal.App.4th at p. 545.) A court may find an implied contract provision only if (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication. (*Frankel,* at p. 545; see also *Foley v. Euless* (1931) 214 Cal. 506, 511–512 [6 P.2d 956]; *Cousins Inv. Co. v. Hastings Clothing Co.* (1941) 45 Cal.App.2d 141, 146–147 [113 P.2d 878] [to imply a covenant in the express terms of a contract, it must appear that "it is necessary . . . in order to give effect to and effectuate the purpose of the contract as a whole"].)

Richard does not meaningfully address these requirements on appeal. In his supplemental papers raising Claire's tax filing status in the family court, he cited to the Civil Code sections and relied on case authority (e.g., *Mainieri v. Magnuson* (1954) 126 Cal.App.2d 426, 429 [272 P.2d 557]) standing for the proposition that if a promise cannot be performed without some other act or forbearance, such act or forbearance will become a condition.[5] In his accompanying declaration below, he referred to an August 1995 "mutually signed letter" which he averred set forth the basic terms of the agreement and provided some indication of the parties' intent as to the general expected amount of Claire's income tax obligation. The letter does not appear in the appellate record, and in resolving the income tax issue, there is no indication the family court provisionally considered the extrinsic evidence or undertook

---

[5] *Mainieri v. Magnuson, supra,* 126 Cal.App.2d 426 does not discuss Civil Code section 1655 or 1656; it cites to the Restatement of Contracts, section 262, and Civil Code section 1439, dealing with the performance of conditions precedent. (*Mainieri,* at p. 429.) The other case cited by Richard, *Farmers & Merchants' Nat. Bk. v. Bailie* (1934) 138 Cal.App. 143 [32 P.2d 157], likewise does not expressly rely on Civil Code section 1655 or 1656; the appellate court there held the trial court interpreted a lease in accordance with the parties' intentions to include a condition precedent of payment of rent and taxes by a lessee even when the lessee failed to take possession of the premises as he was entitled to do under the lease. (*Farmers & Merchants',* at p. 149.)

to interpret the MSA to ascertain the parties' intent with regard to Claire's filing status.[6] Richard does not contend the family court erred by failing to consider testimony or extrinsic evidence to determine the parties' intentions or agreement with respect to such a term.

■ Ultimately, we reject Richard's contentions under Civil Code sections 1655 and 1656 because he does not explain how the MSA cannot be performed without a provision requiring Claire to apply a particular tax filing status, how such a provision is *"necessary* to make [the MSA] reasonable" (Civ. Code, § 1655, italics added), or why such a provision is otherwise indispensable or legally necessary to carry the MSA into effect (Civ. Code, § 1656). Nor does he address the impact of his proposed implied contract term on the MSA's provisions that Richard would pay designated spousal support (which included one-half of Claire's income taxes) irrespective of her remarriage, provisions that arguably express a "contrary intention" (Civ. Code, § 1655) and might be altered by an implied term requiring Claire to file under a particular tax filing status. Richard's main point is that it is reasonable to expect that Claire would select a tax filing status that would minimize her overall tax liability. But "[i]t is not enough to say [a proposed implied provision] is necessary to make the contract fair, or that it ought to have contained a stipulation which is not found in it, or that, without such covenant, it would be improvident or unwise or would operate unjustly; for [parties] have the right to make such contracts." (*Cousins Inv. Co. v. Hastings Clothing Co., supra*, 45 Cal.App.2d at p. 147.) Absent a showing of legal necessity for the implied term, we are compelled to affirm the family court's order that Richard pay $36,208 (with specified credits) towards Claire's 2005 income taxes.

### III. *Sanctions Order*

Richard advances several challenges to the family court's order imposing $5,000 in sanctions against him. First, he contends the court's written order

---

[6] The family court reasoned: "The Court cannot—as I think both parties acknowledge—dictate how someone chooses to file. As long as it's a legal method of filing, and although there might come a point where a Court would look at what a reasonable taxpayer would do, the decision about whether to file as married filing jointly, or married filing separately, in the Court's view doesn't cross over to being unreasonable. [¶] The Court has no evidence before it of why Mr. and Mrs. Lombardo chose to file, but the law certainly allows them to file that way, and there is no evidence that they didn't take all other reasonable deductions, at least Ms. Lombardo didn't in filing her taxes. So the court can't deem the decision to file married, separately, per se as unreasonable." The court went on to find that the fair method of determining Claire's taxes was to calculate Claire's taxes both with and without spousal support, and then deduct Claire's tax liability without the payment of spousal support from the tax liability calculated with support to reveal the net amount "attributable to" the spousal support ordered in the judgment. Richard does not challenge the family court's calculation method.

fails to comply with Code of Civil Procedure section 128.6, subdivisions (a) and (c). Second, Richard contends his actions do not fall within the definition of frivolous within the meaning of Code of Civil Procedure section 128.6, subdivision (b)(2). Finally, Richard points out sanctions were not proper in light of the fact that the family court later acknowledged that he was not responsible to pay any mortgage or interest expense attributable to the $120,000 increase in the principal amount of Claire's mortgage loan.

In response, Claire argues the family court did not abuse its discretion; she asserts Richard's failure to pay her expenses was in violation of a long-standing judgment and that his remedy was not to use "self-help" but to conform his conduct to the judgment and seek the court's authority for a reduction. She further asserts Family Code section 271 (hereafter section 271) authorizes sanctions for disobeying court orders and Family Code section 3557 mandates attorney fee awards in spousal support enforcement proceedings. She asks us to indulge all inferences in favor of the family court's factual findings so as to conclude its order was within the scope of its discretion.

■■ Preliminarily, we point out that Richard misplaces reliance on the requirements of Code of Civil Procedure section 128.6. The statute is not operative. In *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 810–811 [11 Cal.Rptr.3d 298, 86 P.3d 354] (*Olmstead*), the California Supreme Court explained that the statute was to become operative only upon expiration of Code of Civil Procedure section 128.7. The sunset date for Code of Civil Procedure section 128.7 was extended twice, before the most recent legislation extended its operative date indefinitely. (Legis. Counsel's Dig., Assem. Bill No. 1742 (2005–2006 Reg. Sess.) ["This bill would delete the repeal date of January 1, 2006, contained in these provisions and thereby extend indefinitely the operation of these provisions."]; see also Code Civ. Proc., § 128.6, subd. (f) ["This section shall become operative on January 1, 2003, unless a statute that becomes effective on or before this date extends or deletes the repeal date of Section 128.7."].) Thus, Code of Civil Procedure section 128.6 has never come into effect.

■■ The family court did not state the statutory basis for its sanction award, and Claire did not specify in either her order to show cause or her supporting declaration under what statute she sought such an order. The court had no inherent authority to impose sanctions. (*Olmstead, supra,* 32 Cal.4th at p. 809; *Bauguess v. Paine* (1978) 22 Cal.3d 626, 633–640 [150 Cal.Rptr. 461, 586 P.2d 942], superseded by statute on other grounds as stated in *Olmstead,* at p. 809; *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 163–164 [80 Cal.Rptr.3d 812].) In making its order, it expressly found Richard's position in opposing Claire's request for arrears in her housing

expenses was "unreasonable" and that his unilateral action was in "bad faith," suggesting it intended to apply the provisions of Code of Civil Procedure section 128.5 or 128.7.[7]

These uncertainties do not prevent our review, as under settled appellate principles we may affirm the court's sanctions order on any ground supported by the record. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478, fn. 6 [64 Cal.Rptr.3d 29] (*Feldman*); *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 632 [35 Cal.Rptr.3d 1].) As Claire points out, the family court could have relied upon other statutory grounds for imposing sanctions, namely section 271, which provides in relevant part that "the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." (§ 271, subd. (a).)[8] "Section 271, subdivision (a) authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants" and "does not require any actual injury." (*Feldman*, at pp. 1479–1480, italics omitted.) Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction. (*In re Marriage of Petropoulos, supra,* 91 Cal.App.4th at p. 177.)

A sanctions order under section 271 is reviewed for abuse of discretion. (*Feldman, supra,* 153 Cal.App.4th at p. 1478.) Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably

[7] Code of Civil Procedure section 128.5 authorizes imposition of monetary expense sanctions including attorney fees for bad faith actions or tactics, for actions or proceedings filed on or before December 31, 1994. (See *Olmstead, supra,* 32 Cal.4th at p. 812; *Clark v. Optical Coating Laboratory, Inc., supra,* 165 Cal.App.4th at p. 164; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1169 [62 Cal.Rptr.2d 466] [applying statute in connection with petition to modify child support filed in Apr. 1995 because underlying divorce action was filed in 1960].) To recover sanctions under Code of Civil Procedure section 128.7, the movant need not show subjective bad faith, but instead that the challenged conduct was " 'objectively unreasonable.' " (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 [128 Cal.Rptr.2d 65].) We cannot uphold the trial court's sanction award under Code of Civil Procedure section 128.7, because Claire did not comply with its strict procedural requirements, including that the motion "shall be made separately from other motions or requests . . . ." (Code Civ. Proc., § 128.7, subd. (c)(1).) Claire's motion for sanctions does not comply because it was combined with her motion to establish arrears.

[8] Section 271, subdivision (a) further provides: "In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. (*Ibid.*; *In re Marriage of Petropoulos, supra*, 91 Cal.App.4th at pp. 177–178.) "We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review." (*Feldman*, at p. 1479.)

We do not perceive a manifest abuse of the family court's discretion in reaching its sanctions order under section 271. Claire served Richard with notice of her sanctions request when she filed and served her order to show cause in February 2007. Further, Claire detailed Richard's conduct and asked the court to impose sanctions for it in her accompanying declaration. The record thus shows Richard was provided notice he might be sanctioned in connection with Claire's request for housing cost arrearages, and he had an opportunity to respond to her request. The record does not indicate Richard questioned the statutory basis for Claire's sanctions request at any point before the family court reached its decision.[9] Claire was not required to establish any particular harm as a prerequisite to a sanctions award under section 271. (*Feldman, supra*, 153 Cal.App.4th at pp. 1479–1480.) Finally, at the hearing, Claire's counsel stated that the requested sanctions were in the nature of a contribution to Claire's attorney fees.

 In his reply brief, Richard argues the order was improper because Claire provided no evidentiary support as to the amount of attorney fees and costs she had incurred, and in any event, the family court thereafter awarded Claire her attorney fees and costs in a later hearing. He faults the court for failing to explain why sanctions were appropriate in addition to attorney fees. These arguments do not persuade us to find an abuse of discretion. "While the court must take into consideration all evidence concerning the parties' incomes, assets and liabilities, the only stricture imposed by section 271 is that the sanction may not impose 'an unreasonable financial burden' on the party sanctioned." (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 403 [50 Cal.Rptr.3d 436].) Richard does not challenge the financial impact of the sanctions order upon him. Further, Richard's argument as to the lack of supporting evidence fails because a sanctions award under section 271 need not "be limited to the cost to the other side resulting from the bad conduct." (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [22 Cal.Rptr.2d 537] [addressing Civ. Code, former § 4370.6, the substantively identical predecessor statute to Fam. Code, § 271].) Because section 271 is not a need-based statute and does not require a correlation between the sanctioned conduct and specific attorney fees, it was not essential that Claire demonstrate her current

---

[9] It was not until Richard moved for reconsideration of the court's sanctions order (among others), that he argued Claire had not included any "evidentiary declaration with respect to sanctions" in her moving papers and thus he was not given an opportunity to reply to any argument requesting such sanctions. As indicated, the record contradicts his assertion.

financial situation and attorney fees by submitting an income and expense declaration. (See *Burkle v. Burkle, supra*, 144 Cal.App.4th at p. 403 [failure to submit income and expense declaration as required by Cal. Rules of Court, rule 5.128 does not create jurisdictional barrier to § 271 award].)

Here, the court had information permitting it to make a reasoned determination of an appropriate amount of sanctions that would not impose an undue hardship on Richard and would not exceed the total attorney fees Claire had incurred. In her declaration accompanying her order to show cause for sanctions, Claire averred that she and Richard had been involved in postjudgment litigation since 2001 as a result of Richard's failure to meet his obligations under the judgment, and that "getting the award for arrears cost me in excess of $200,000 in attorney fees." In April 2006, Claire had filed an income and expense declaration indicating she still owed her attorneys over $146,577.97 in fees, and had paid them over approximately $183,000 as of that time. The record shows the family court had several years of Claire's income and expense declarations and Claire's supporting declaration before it at the hearing on the matter. If Richard had wished to challenge his ability to pay any sanction award, he could have submitted his own current income and expense declaration. He has not met his burden to show reversible error or an abuse of discretion in the sanctions order.

Finally, we reject Richard's assertion that the sanctions order should be reversed in view of the family court's later ruling that he was not obligated to pay any of Claire's mortgage attributable to the additional $120,000 increase in her loan. Claire's sanctions request was made in February 2007, months before Richard first raised the issue of the refinance of her condominium; she argued sanctions were warranted due to Richard's unilateral action reducing his payments for her housing costs, which was based on his belief that her new husband was paying one-half the expense. She pointed out Richard had forced her to incur the expense of returning to court to compel him to pay in the face of the plain obligations of the MSA, which defined housing costs in a specified manner and unequivocally required him to pay support irrespective of her remarriage. When the family court considered the issue of Claire's refinance much later, it made clear in its ruling (as it had previously ruled when it found Richard's position to be unreasonably taken) that the fact Claire and her husband were both legally responsible for the mortgage did not affect the amount of housing costs owed by Richard under the MSA. We will not reverse a sanctions award due to Richard's success on an issue that was not the basis for the award in the first place. As stated, sanctions under section 271 are justified when a party has unreasonably increased the cost of litigation. Richard's conduct in connection with his obligation to pay Claire's housing costs meets that standard.

## DISPOSITION

The appeal is dismissed as to the family court's order confirming the arbitration award. The orders as to Richard's share of Claire's 2005 federal and state income tax obligation and imposing $5,000 in sanctions are affirmed. Claire shall recover her costs on appeal.

Benke, Acting P. J., and McDonald, J., concurred.