Filed 1/28/25  Ellen E. v. Paul C. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| ELLEN E.,<br><br>          Appellant,<br><br>v.<br><br>PAUL C.,<br><br>          Respondent. | A168490<br><br><br>(Alameda County<br>Super. Ct. No. VF08389120) |

This is an appeal in a family law matter from a court order imposing sanctions against in pro. per. appellant Ellen E. in the amount of $10,000 as a penalty for filing a meritless and vexatious action against respondent Paul C., her former husband.  Respondent, in turn, asks that we affirm the sanctions order as a proper exercise of the court's discretion and that we issue an order to show cause (OSC) as to why additional sanctions should not be assessed against appellant for filing a frivolous appeal.  We conclude appellant failed to meet her burden on appeal to prove trial court error.  Accordingly, we affirm the order.  We reject respondent's request for an OSC as not warranted on this record.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties were married on August 22, 1998, and separated on March 1, 2008.  A status-only judgment of dissolution was filed in December 2009.

1

The parties share two daughters, Alexandra C., born in June 2002, and Rachel C., born in November 2004. Pursuant to a visitation order entered on March 6, 2019, the parties share joint legal and physical custody of their children with "alternating weekends." This visitation order ceased to operate as to Alexandra in June 2020, when Alexandra reached the age of maturity.

On August 22, 2022, appellant, proceeding in propria persona, filed a request for order (RFO) (Judicial Council Forms, form FL-300) seeking (1) a determination by the trial court that respondent had perpetrated domestic violence within the past five years for purposes of the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.);[1] (2) a determination by the court, based on respondent's perpetration of domestic violence within the past five years, that a presumption had arisen under section 3044 that respondent's legal or physical custody of Rachel (a few months shy of her 18th birthday) was not in Rachel's best interests; and (3) an order granting appellant sole custody of Rachel pending respondent's completion of certain remedial actions, including a 52-week batterers program and a parenting class. Appellant's RFO did not include a request for a domestic violence restraining order (DVRO) against respondent; nor had a DVRO previously been entered in the case.

In connection with this RFO, appellant filed a declaration alleging 13 incidents of domestic violence by respondent against appellant occurring between October 2007 and August 2010. In addition, appellant alleged a 2019 incident of domestic violence involving respondent and his second wife, Goli S., that occurred in the presence of the parties' older daughter, Alexandra. According to appellant's declaration, respondent was arrested

---

[1] Unless otherwise stated, all statutory citations herein are to the Family Code.

2

during this incident and a temporary restraining order was issued against him. However, this restraining order was later vacated by stipulation of respondent and Goli.

At a September 13, 2022 hearing on appellant's RFO, both parties requested a continuance of the matter. The court granted their joint request but warned it would almost certainly be impossible to have the matter heard before Rachel turned 18 in November 2022. The court noted, "[F]or me to even rule on any kind of visitation, it will [be] moot at that point because the child will be age 18." Respondent's counsel added, "I'd like to also say, for the record, that if [appellant] persists in dealing with this issue, and we're not going to get to Family Court Services before the child turns 18, I am going [to] probably suggest that [respondent] consider filing his own RFO for [section] 271 sanctions, because this is kind of silly." The trial court then ordered the parties to meet and confer in good faith, in person or through counsel, on the issues raised in appellant's RFO before returning to court.

A few weeks later, on September 21, 2022, respondent did indeed notify appellant of his intent to move for sanctions if she did not dismiss the RFO within 21 days. Twenty-one days later, on October 12, 2022, respondent filed his promised sanctions motion, citing both Code of Civil Procedure section 128.5 and Family Code section 271.

A subsequent hearing was held on November 8, 2022. This time, counsel appeared on appellant's behalf. Counsel argued that although appellant recognized the custody and visitation issues would soon be moot because Rachel was turning 18 years old, appellant still sought a finding under section 3044 that respondent was a perpetrator of domestic violence and remedial orders that he complete a batterers program and parenting classes "to prevent future acts of abuse" toward "my client, the now, or soon

3

to be adult children, then also the ex-wife [Goli S.], and, potentially, the ex-wife's child, who is still under age . . . ."

At a February 2, 2023, status conference, the trial court dismissed appellant's RFO as moot since Rachel had turned 18.[2]

On March 7, 2023, the trial court, with a new judge presiding, heard respondent's motion for sanctions. Respondent argued that appellant's RFO was frivolous and vexatious and that he had incurred over $48,000 in attorney fees and costs since August 2022 as a result of appellant's various legal filings. Appellant, in turn, defended her RFO as justified given respondent's alleged history of domestic violence.

The trial court questioned appellant about her decision to file the RFO in August 2022, knowing that it would not be heard before Rachel turned age 18, which would render the RFO moot. The court also questioned appellant, "[W]hat's the purpose of getting a [section] 3044 finding?" Appellant responded, "To have it use the batterer's program for [respondent]. He continues to display violence. And even in our interactions, in our custody, trying to—to have—have the orders followed . . . ." "So, it was my understanding this would be something that the Court could be able to recognize the pattern, and be able to have him take the batterer's program, and make a ruling to make him more aware of that behavior, that pattern."

After hearing from the parties, the trial court granted respondent's motion and ordered appellant to pay $10,000 in sanctions pursuant to Code of Civil Procedure section 128.5, subdivision (a) and Family Code section 271. Appellant's timely appeal followed.

---

[2] The reporter's transcript from this hearing is not in the record.

4

## DISCUSSION

The substantive issue on appeal is whether the trial court erred in imposing $10,000 in sanctions against appellant pursuant to Code of Civil Procedure section 128.5 and Family Code section 271. Respondent also contends as a procedural matter that appellant's arguments should be deemed forfeited because her opening brief fails to comply with mandatory rules of appellate procedure. We address these issues as appropriate *post*, beginning with the applicable law.

"Under Code of Civil Procedure section 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually. . . . A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [citations]; [citation].)" (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440; accord, *State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 982 ["a claim is clearly frivolous 'when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law' "].)

Relatedly, section 271 authorizes a " 'court [to] base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of

5

litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.' (§ 271, subd. (a).)" (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.)

On appeal, we review a sanctions order for abuse of discretion. (*In re Marriage of Corona, supra*, 172 Cal.App.4th at p. 1225.) "Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.] 'We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.' " (*Id*. at pp. 1225–1226.)

Below, respondent's counsel sought $20,000 in sanctions based on appellant's allegedly frivolous and vexatious litigation tactics, noting that respondent had incurred over $48,000 in attorney fees and costs since August of 2023. According to counsel: "[Appellant] filed significant discovery requests, that we had to respond to: All cost him money. · She also filed an OSC re contempt, which you dismissed. · And that really doesn't go to the [request for a section] 3044 finding, but it's a pattern of harassment that continues, and has continued since the parties actually started the divorce. [¶] And she then also issued four subpoenas duces tecums [*sic*], which we had to file four motions to compel. · There's this sanction hearing. · And she filed an RFO, another RFO, for the Court to determine arrears on a self-executing child support order when she hadn't complied with [the] child support order. [¶] . . . [¶] We also had to retain a contempt counsel for the contempt that was issued but then dismissed, because . . . I believe [appellant] didn't show up for the January 30 hearing."

6

Respondent's counsel continued: "All in all, it's just a continued pattern of anything [appellant] can do to make my client incur attorney's fees, and most of it has no merit, whatsoever. [¶] . . . I will say that the last time we were here, you reminded [appellant] that Judge Clay was an eyelash away from deeming her a vexatious litigant. [¶] She then tried to argue with you about refiling the contempt on . . . an RFO that you just denied. [¶] So, I think the only way we can stop [appellant] from continuing her campaign is to issue sanctions, and we're asking for, like, $20,000 in sanctions, which is . . . actually—one-third of what he's paying . . . ."

The trial court accepted respondent's argument and ordered appellant to pay $10,000 in sanctions, which was half of what respondent requested: "You know, this is—this is harassing. · This is just—I—it's over, and over, over again. · And I don't think the message is really sinking in as to the—the excessive purposeless attempted litigation here by you, ma'am. [¶] And, you know, you've been given an opportunity, apparently a warning, before the filing of this motion, but you persisted. [¶] I don't see, you know, what could have been gained, realistically, practically, or, in fact, frankly, from you pursuing the RFO for the [section] 3044 finding. [¶] I do understand—under [section] 271, I do have to consider the parties' income, assets and liabilities. · And I did re-review [appellant's] Income and Expense Declaration, filed December 2nd of 2022, and that's why I'm not granting the full requested $20,000, and setting it at $10,000. [¶] It needs to be set, though, at a level that—that is an appropriate sanction under the circumstances. · I don't know what's left to litigate here: There should be nothing."

On appeal, appellant insists her RFO was not frivolous. Yet, appellant does nothing whatsoever to dispute the court's actual finding, which was that her litigation tactics were excessive and improper. With very little citation to

7

the record or the relevant case law, appellant argues that "[she] properly used a Request for Order (FL-300)—given she was not seeking a restraining order—to have the Superior Court hear evidence to make findings, as well as remedial orders, within the [DVPA], that [respondent] is a perpetrator of domestic violence, substantively supported by numerous documents [and] by several different parties . . . ." Appellant's argument misses the point.

Because a trial court's order is presumed correct on appeal, the appellant bears the burden to prove the trial court erred. (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 254, fn. 11.) Accordingly, in order to obtain reversal, appellant must establish that, viewing all the evidence in a light most favorable to the trial court, no reasonable judge could have made the sanctions order. (*In re Marriage of Corona, supra*, 172 Cal.App.4th at pp. 1225–1226.) The fact that appellant is proceeding in propria persona does nothing to lighten this burden. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 [" 'self-represented parties are " 'held to the same restrictive procedural rules as an attorney.' " [Citation.] 'A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation" ' "].)

In her briefs, appellant does not address the court's finding that she had exhibited a pattern of engaging in "excessive purposeless attempted litigation" other than to assert that the court (and respondent) were wrong. Appellant's assertion does not suffice on appeal, as it provides no basis for this court to review the lower court's ruling. While we generally review a trial court's factual finding for substantial evidence (*In re Marriage of Corona, supra*, 172 Cal.App.4th at p. 1226), when, as here, the appellant fails to address the trial court's finding with reference to the actual record or

relevant case law, we will not employ appellate court resources to do so for her.[3] (*In re Marriage of Carlisle, supra*, 60 Cal.App.5th at p. 254, fn. 11 [to prove error, the appellant must "present[] legal authority and analysis on each point made, supported by appropriate citations to the material facts in the record, or else the argument may be deemed forfeited"].)

Accordingly, appellant's challenge fails for the lack of a proper demonstration that the trial court abused its discretion in ordering her to pay $10,000 in sanctions.[4] (*In re Marriage of Corona, supra*, 172 Cal.App.4th at p. 1225 ["Litigants who flout [§ 271's] policy of [promoting settlement and encouraging cooperation] by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a . . . sanction"].)

Finally, we decline respondent's request to issue an OSC as to why additional sanctions should not be imposed for filing a frivolous appeal. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse

---

[3] Appellant also asserts, without any record citation or legal analysis: "The Superior Court failed to comply with giving Family Code section 3044 notices to the parties for more than a 10-year period, through five ('5') judicial officers, considering [appellant] filed sworn allegations of domestic violence on March 5, 2011, and continued to make repeated references to domestic violence concerns throughout the dissolution." This argument is also forfeited. (*In re Marriage of Carlisle, supra*, 60 Cal.App.5th at p. 254, fn. 11.)

[4] We also reject appellant's procedural argument that respondent's sanctions motion was untimely under Code of Civil Procedure section 128.5, subdivision (f)(1)(B) because he served the motion 20 days after giving notice that he intended to move for sanctions if she did not withdraw her RFO within 21 days. Assuming appellant is correct, appellant does not claim she suffered any prejudice as a result of respondent's filing the motion a day early and, thus, has identified no grounds for reversal. (*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 334 [an asserted error must be sufficiently prejudicial to justify a reversal].)

9

judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Respondent has presented no evidence that appellant prosecuted this appeal for an improper motive or that the issues appellant raised meet the legal definition of frivolous.  (*Ibid.* ["An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions"].)  The trial court's order imposing sanctions against appellant in the amount of $10,000 was appropriate, and no basis exists to impose more.

## DISPOSITION

The order imposing sanctions against appellant in the amount of $10,000 is affirmed.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A168490/*Ellen E. v. Paul C.*

10