Filed 10/18/23  Marriage of Grewal CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of HARSIMRAN "GP" GREWAL and JENNIFER CROFT GREWAL. | H050225<br>(Santa Clara County<br>Super. Ct. No. 18FL001331) |
| HARSIMRAN "GP" GREWAL,<br><br>    Appellant,<br><br>    v.<br><br>JENNIFER CROFT GREWAL,<br><br>    Respondent. | |

Harsimran "GP" Grewal filed a petition for dissolution on April 4, 2018, involving his spouse, Jennifer Croft Grewal.[1]  On March 17, 2022—following two months of written communication by Jennifer's counsel that was largely ignored by Harsimran's counsel—Jennifer filed a request for order (RFO) concerning support issues.  In her RFO, she also sought an award of attorney fees under Family Code sections 271 or 2030.[2]  After a hearing on the RFO on April 28, 2022, the court continued the support issues for

---

[1] We refer to the parties by their first names for convenience and clarity; we mean no disrespect in doing so.  (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

[2] All further unspecified statutory references are to the Family Code.

further hearing and granted Jennifer's request for attorney fees and costs in the amount of $11,163.02 as sanctions under section 271. A formal order awarding attorney fees was entered on June 2, 2022.

In his appeal from the attorney fee order, Harsimran raises several procedural objections, and he contends that there was no substantial evidence to support the award made under section 271. We conclude that the trial court did not abuse its discretion in awarding attorney fees as sanctions under section 271. We will therefore affirm the order.

## I.    PROCEDURAL BACKGROUND

### A.    Petition

Harsimran filed a petition for dissolution on April 4, 2018. The parties had been married for approximately 18 and one-half years, and they have three children. The record reflects that the proceedings have been protracted and contentious.[3]

### B.    Request For Order (March 17, 2022)

#### 1.    Jennifer's RFO Papers

On March 17, 2022, Jennifer filed the RFO. The request consisted of a form request for order with notice of hearing, and a number of attachments, exhibits, a declaration of Jennifer's counsel, Rebecca Sue Jones, and an income and expense declaration signed by Jennifer. Jennifer alleged that Harsimran was "an extraordinarily high earner, with annual compensation of approximately $719,972.12." She "remain[ed] disabled following recent right hand surgery and [was] scheduled for left hand surgery on May 6, 2022 and therefore [was] unable to work." Jennifer sought two orders in her RFO.

The first order Jennifer sought in the RFO was an order requiring Harsimran's "compliance with [] orders relating to the payment of additional child and spousal

---

[3] Jennifer stated in her RFO that, as of March 1, 2022, she had spent over $329,000 in legal and consulting fees in the proceedings.

support due on January 10, 2022." She alleged that the parties had agreed, through a stipulation and order of November 19, 2021, that there would be a "true[-]up" under *Smith-Ostler*[4] relating to additional child and spousal support that would be owed based upon additional income, and that this task would be performed twice a year, on January 10 and July 10.

Jennifer alleged that on January 7, 2022, Harsimran provided all of his 2021 paystubs, which showed additional income. On January 10, 2022, Jones sent an e-mail to Harsimran's counsel, Michael Leight, requesting that his client pay $30,120.87 as additional support based upon cash bonuses received in 2021. Leight responded on January 11, but did not indicate that Harsimran would make the payment requested. Instead, he stated, "I am not going to commit my client to pay some unspecified amount of money at some uncertain time." Jones thereafter requested that Megan Thompson, CPA—who had previously been appointed as a neutral court expert pursuant to a stipulation and order—calculate the total amount of additional *Smith-Ostler* support due from Harsimran based upon all additional 2021 income received from bonuses, restricted stock units (RSU's), and increased salary. Jones sent a follow-up request to Leight on February 11, 2022, seeking $30,120.87, as previously demanded. After receiving a report from accountant Thompson that included a calculation of total support arrearages, on February 25, 2022, Jones sent a third e-mail to Leight, demanding that Harsimran pay $88,256.72 for *Smith-Ostler* additional support for the period of July 1 to December 31, 2021. Because Harsimran, through counsel, did not respond to this demand, Jennifer filed the RFO on March 17, 2022.

---

[4] See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Smith-Ostler*). A *Smith-Ostler* provision specifies " 'an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received.' [Citations.] Its purpose is to capture fluctuations in the supporting spouse's income that are not included in a flat rate amount of support. [Citation.]" (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949.)

The second order that Jennifer sought in the RFO was an order awarding her attorney fees and costs of $15,000 to be paid by Harsimran. Although the basis for the request was not stated in the form RFO, Jennifer indicated in attachment 10 to her request that she was seeking an attorney fees award of $15,000 under sections 271 and 2030.[5] She asserted that an award of fees under section 271 was "appropriate as [Harsimran] continues to disregard court orders and he and his counsel have refused to even respond to our correspondence requesting that [he] pay his additional child and spousal support as set forth in the November 19, 2021 [stipulation and order]. This is a blatant disregard for this court's order. This is the second time [Jennifer] has had to file a Request for Orders to enforce terms of the court's previous orders. [¶] . . . [Harsimran] has already paid $10,000 towards [Jennifer's] attorney's fees and, despite this payment, [Harsimran] continues to ignore the court orders." Jennifer claimed further that she had incurred fees to the court-appointed accountant, Thompson, of over $21,000, and that "[m]ost of this [cost was] due to [Harsimran's] delays in providing the necessary information for [Thompson's] reports, his inconsistent and contradictory instructions to [her] for adjustments, and comments he has made about these reports." Jennifer also alleged that she had incurred additional legal fees as a result of Jones's efforts to obtain *Smith-Ostler* support payments from Harsimran. In the accompanying declaration of attorney Jones, it was reiterated that Jennifer was "requesting attorney's fees pursuant to Family Code §271 as the conduct of [Harsimran] continues to refuse to follow the court's orders. [*Sic.*]"

Jennifer claimed that an award of attorney fees was also appropriate under section 2030. She contended that she was at the time disabled and unable to return to work, had no independent income, and, if her fee request were denied, "she would not be able to maintain legal representation." In the declaration accompanying the RFO, Jones reiterated that an award of fees under section 2030 was appropriate because "there is a

_____

[5] Jones's declaration in support of the RFO also contained a statement that attorney fees were being sought under sections 271 and 2030.

4

significant disparity in income in order to retain counsel in that [Jennifer] is currently unemployed and on temporary total medical disability post-surgery."

### 2.     Harsimran's Opposition to RFO

Harsimran filed opposition to the RFO on April 13, 2022.  Harsimran also submitted an income and expense declaration.  Harsimran raised several evidentiary and legal arguments in opposing the RFO.

Harsimran asserted that on March 21, 2022, his attorney, Leight, sent by overnight mail, a letter to Jones enclosing a check payable to Jennifer in the amount of $155,243.97.[6]  Harsimran stated that, based upon his calculations, this sum represented the amount of support owed through December 31, 2021.  He concluded that, contrary to the allegations in the RFO, he had complied fully with his obligations under the November 19, 2021 stipulation and order.

Harsimran in his opposition also contested Jennifer's claim in the RFO that she had no available assets to pay her own attorney fees.   He stated that since the commencement of the proceeding, Jennifer had received community property distributions of approximately $440,000 and child and spousal support payments of $491,222.97.

Harsimran also opposed the RFO by challenging the calculations of Thompson upon which Jennifer relied.  He argued that Thompson's report was not identified as either a preliminary or final report, contained miscalculations, and omitted material information concerning income Jennifer had received.

On the question of Jennifer's request for attorney fees under section 271, Harsimran asserted that sanctions should be imposed under section 271 against *Jennifer*, not Harsimran.  In support of this position, his counsel, Leight, declared that on

---

[6] This would have meant that Jennifer's attorney received the support payment on March 22, four days *after* the RFO and supporting papers were filed, and two days *before* counsel for Harsimran was served with the RFO papers.

March 10, 2022—in contemplation of a March 15, 2022 settlement conference—he submitted a 25-page draft stipulation for judgment to Jones, Jennifer's attorney, for settlement purposes. At the conference, Jones indicated she had not reviewed the document and requested a continuance; the conference was continued to June 7, 2022. Leight declared further that, as of April 12, 2022, he had yet to receive a response from Jones to the settlement proposal contained in the draft stipulation for judgment.

Harsimran argued further that the RFO should be denied because Jennifer had not submitted admissible, probative evidence to support the relief she sought.

### 3. *Jennifer's Reply in Support of RFO*

Jennifer submitted reply papers consisting of further declarations by Jones and Jennifer. Jones declared that on April 8, 2022, Leight sent a letter "in essence 'firing' Ms. Thompson and indicating that she [was] to do no additional work on this matter." Jones asserted that under the terms of the stipulation and order of April 23, 2019 appointing Thompson as a neutral accounting expert, Harsimran and Leight had no authority to terminate Thompson.

Jones also noted that although the November 19, 2021 stipulation and order specifically provided for true-ups reflecting additional support on January 10 and July 10, as a result of a drafting "oversight," the document did not contain specific *payment dates* for additional support following true-up. Jones requested that the court order payment due dates.

Additionally, Jones replied that, although Jennifer had received Harsimran's payment of $155,243.97 on March 22, 2022, it was received after the filing of the RFO. The payment, Jones asserted, did not address *Smith-Ostler* additional support due for 2021; rather, it covered a portion of spousal and child support arrearages from November 1, 2018 through June 30, 2021.

Lastly, Jones declared that the total amount of attorney fees and costs incurred by Jennifer in efforts to obtain payment from Harsimran for additional support amounts due

from the January 10 true-up was $11,163.02. She asked that Harsimran be ordered to pay this sum "because of the disparity of income between the parties and the delays which have been caused by [Harsimran's] refusal to comply with the court orders and habitual uncooperativeness in this matter."

In her reply declaration, Jennifer stated that she had expended more than $341,000 in fees and costs in the proceeding. Jennifer indicated that she had been receiving "uncharacterized support" of $7,500 per month from March 15, 2019, to November 15, 2021, pending determination of the actual amount of support by accountant Thompson. Jennifer stated further that for three years, Harsimran had refused to accept Thompson's support calculations, and Jennifer had been required to file a request for order and an order to show cause re contempt to force Harsimran to cooperate with Thompson and to pay her invoices. She stated that during those three years, her monthly expenses were approximately $10,000 and thus she "was in the red at least $2,500 per month."

### 4. Further Evidentiary Objections by Harsimran

Harsimran filed two pleadings asserting evidentiary objections to Jennifer's reply papers.

### 5. Hearing on RFO (April 28, 2022)

The court conducted a hearing on the RFO on April 28, 2022. Jones, on behalf of Jennifer, submitted the RFO on her moving and reply papers. Leight, on behalf of Harsimran, argued that the November 19, 2021 stipulation and order for which enforcement was sought did not include a specific order that Harsimran pay money. He further argued that there was no competent admissible evidence that would permit the court to determine the amount of money owed. Leight argued that Harsimran had complied with the stipulation and order by making the payment of support in April 2022 of $155,243.97. And Leight asserted that there was no basis for imposing attorney fees against Harsimran.

The court granted the RFO in part. It granted Jennifer's request that under the stipulation, the *Smith-Ostler* additional support payments would be due under the stipulation and order for 2022, on January 15, 2022, and on January 15 for each of the following years, and on July 15, 2022, and on July 15 for each of the following years. The court further granted the request for attorney fees as sanctions under section 271 and awarded the fully amount requested of $11,163.02. The court found that there had "been a history in this case of frustrating the process and frustrating the policy of settlement [exhibited by Harsimran]." The court denied the request to award attorney fees under section 2030, concluding that while "there is certainly a disparity in income in this case, . . . [Jennifer] can afford to pay her own fees at this time," particularly in light of the recent payment she received from Harsimran. The court ordered a further hearing to determine the amount of additional support under *Smith-Ostler* that was owing.

### 6. Order (June 2, 2022)

On June 2, 2022, a formal order was filed confirming the court's ruling on April 28, 2022, on Jennifer's request for attorney fees under section 271. The court ordered that Harsimran pay attorney fees of $11,163.02 as sanctions under section 271 within 45 days of June 2, 2022, finding that Harsimran had "frustrated the settlement process."

Harsimran filed a timely notice of appeal from the order. (See *In re Marriage of Freeman* (2005) 132 Cal.App.4th 1, 5 & fn. 4 [order imposing sanctions under § 271 appealable].)

## II. DISCUSSION

### A. Family Code Section 271

Attorney fees and costs are awardable as sanctions under the Family Code. Section 271, subdivision (a) provides: "[T]he court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to

8

reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

Section 271 "advances the policy of the law 'to promote settlement and to encourage cooperation which will reduce the cost of litigation.' [Citation.] Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction. [Citations.]" (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177; see also *In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1106 [sanctions under § 271 may address "obstreperous conduct which frustrated the policy of the law in favor of settlement, and caused the costs of the litigation to greatly increase"].)

Unlike other sanctions statutes, such as Code of Civil Procedure section 128.5, subdivision (a), where the conduct to be sanctionable must be "frivolous or solely intended to cause unnecessary delay," Family Code section 271 "is aimed at conduct that frustrates settlement of family law litigation. Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318). (See also *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227 ["sanctions under section 271 are justified when a party has unreasonably increased the cost of litigation"].)

9

Although the actions that frustrate family law policies of settlement and reduction of litigation cost may be those of the party or the party's attorney, sanctions under section 271 are awardable *only against the party*. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1535, fn. 17.) The party may thus be vicariously liable for his or her attorney's misconduct in the payment of sanctions. As explained by one court in describing the effect of Civil Code section 4370.6, a predecessor statute to Family Code section 271,[7] "[Civil Code s]ection 4370.6 explicitly makes parties liable for the obstreperous actions of their counsel . . . . Therefore, we see no abuse of discretion by the trial court in imposing a fee-shifting award upon a party for the actions of counsel. As between counsel and her client, of course, it would seem only fair that counsel bear the cost of the award occasioned by her conduct, unless that conduct was ordered, approved, or countenanced by the client. [Citation.]" (*In re Marriage of Daniels*, *supra*, 19 Cal.App.4th at pp. 1110-1111.)

A party moving for relief under section 271 need not "show harm as a prerequisite to an award of sanctions." (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1480.) But an award of sanctions under section 271 must be "tethered to attorney fees and costs." (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 351.) And while the statute plainly requires that the award be based upon attorney fees and costs related to a party's conduct that frustrates the policies of promotion of settlement and, where possible, reducing litigation costs, "the party seeking sanctions pursuant to section 271 need not establish with great precision an amount directly caused by the improper conduct. [Citation.]" (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1155-1156.)

**B.      Standard of Review**

As the California Supreme Court has reiterated, "it is a fundamental principle of appellate procedure that a trial court judgment [or appealable order] is ordinarily

---

[7] See *In re Marriage of Freeman*, *supra*, 132 Cal.App.4th at page 6.

presumed to be correct." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) " 'All intendments and presumptions are indulged to support [the lower court's judgment or order] on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Any ambiguities in the record are resolved in favor of affirmance of the judgment or order. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) It is the appellant's burden to overcome the presumption of correctness by demonstrating, through an adequate record, error requiring reversal. (*Jameson*, *supra*, at p. 609.)

An award of attorney fees and costs as sanctions under section 271 is "reviewed for abuse of discretion. [Citation.] . . . [W]e will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.] 'We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.' [Citation.]" (*In re Marriage of Corona*, *supra*, 172 Cal.App.4th at pp. 1225-1226; see also *In re Marriage of Feldman*, *supra*, 153 Cal.App.4th at p. 1478.) And we review for substantial evidence the factual findings upon which the sanctions order is based. (*In re Marriage of Feldman*, *supra*, at p. 1479.) In short, " '[w]e will not interfere with the order for sanctions unless the trial court abused its broad discretion in making it.' [Citation.]" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 828.) The appellant bears the burden of demonstrating that the trial court abused its discretion. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16.)

## C. Attorney Fee Award Was Proper

### 1. Substantial Evidence Supports the Order

Harsimran makes substantive and procedural arguments in support of his challenge to the attorney fee award. We first address his substantive argument, namely,

11

that Jennifer presented no evidence of obstreperous conduct—and there was no such conduct—to support sanctions under section 271.

At the outset, we reiterate that we review the trial court's sanctions order under section 271 for abuse of discretion. (*In re Marriage of Feldman*, *supra*, 153 Cal.App.4th at p. 1478.) Under this standard, "we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.] 'We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.' [Citation.]" (*In re Marriage of Corona*, *supra*, 172 Cal.App.4th at pp. 1225-1226.)

Here, considering all evidence, and viewing it most favorably in support of the court's order, there was substantial evidence to support the attorney fee order. As we discuss, our conclusion is based upon evidence presented that focused on two topics.

### a. Communications Re Additional Support Payment

We identify and discuss the significance of Jennifer's evidentiary showing leading up to the filing of the RFO on March 17, 2022. On November 19, 2021, pursuant to the parties' agreement, a stipulation and order was entered that provided for a "true[-]up" under *Smith-Ostler* of support amounts due for additional income received, and that this reconciliation would be performed on January 10 and July 10 of each year. After receiving Harsimran 2021 paystubs on January 7, 2022, Jennifer's counsel, Jones, sent a January 10 e-mail to Harsimran's counsel, Leight, requesting that his client pay $30,120.87 as additional support under *Smith-Ostler* based upon cash bonuses Harsimran received in 2021. In that e-mail, Jones also requested that the parties submit to accountant Thompson the additional support calculations on Harsimran's RSU income.

Leight responded on January 11, 2022, in a letter to Jones. He did not indicate that Harsimran would make the payment requested (or any other support payment). Further, Leight did not address Jones's request that the parties submit Harsimran's RSU

12

income to Thompson for her to calculate additional support. Instead, Leight stated, "I am not going to commit my client to pay some unspecified amount of money at some uncertain time." Leight stated further that, "All I can tell you is we will work in good faith to respond to your [January 10] email promptly."

On January 24, 2022, Jones requested in an e-mail to Thompson (on which Leight was copied) that Thompson calculate the total amount of additional *Smith-Ostler* support due from Harsimran based upon all additional 2021 income received from bonuses, RSU's, and increased salary.

Jones sent a follow-up e-mail to Leight on February 11, 2022, again seeking the $30,120.87 previously demanded. Jones also requested payment of interest on the principal amount, which she claimed was past due.

After receiving a report on February 17, 2022, from accountant Thompson, including a calculation of total support arrearages, Jones, on February 25, sent a third e-mail to Leight, demanding that Harsimran pay $88,256.72 for *Smith-Ostler* additional support for the period of July 1 to December 31, 2021. Jones stated that "[t]his sum is in addition to the sum of $219,207.04 that Mr. Grewal owes for the period of November 5, 2018 through June 30, 2020 as set forth in Ms. Thompson's report." Jones requested that payment of the $88,256.72, plus interest, be made no later than March 1, 2022. Jones stated further that "[t]his is our third request with no reply from you or your client for Mr. Grewal to comply with this Order and as such we will once again be requesting attorney's fees and costs for having to seek the court's assistance."

Since Harsimran did not make payment as requested, and his counsel, Leight, did not respond to the three demands (other than what was stated in his January 11 letter), Jennifer filed the RFO on March 17, 2022.

The evidence presented in support of the RFO, viewed most favorably to respondent, showed that Leight ignored Jones's efforts for over two months to avoid court intervention to compel Harsimran to perform the "true[-]up" required under the

November 19, 2021 stipulation and order and to make the *Smith-Ostler* payments. Leight's January 11 e-mail indicating to Jones that he would "not . . . commit [his] client to pay some unspecified amount of money at some uncertain time" was entirely nonresponsive. And Leight's statement in the same e-mail that he and his client would "work in good faith to respond to [Jones's January 10] email promptly" is not supported by their subsequent conduct: After Leight sent his January 11 e-mail, and up to the filing of the RFO, Leight provided *no response at all for 65 days*.

The evidence is uncontroverted that Leight ignored Jones's repeated attempts to avoid having to file the RFO. Although Leight submitted a declaration opposing the RFO, he, significantly, did not indicate in that declaration that he (1) had responded to Jones's three requests that Harsimran make *Smith-Ostler* payments; (2) had advised Jones that he disputed her calculations; (3) had advised Jones that he disputed Thompson's calculations; (4) disputed that his client was obligated to make *Smith-Ostler* payments *in some amount* under the terms of the November 19, 2021 stipulation and order; (5) disputed that, under the terms of the November 19, 2021 stipulation and order, the parties had a "true[-]up" obligation on January 10 and July 10 of each year to determine the amount due for additional *Smith-Ostler* support; or (6) had given *any* specific consideration to Jones's three requests for payment. This evidence alone supported a finding justifying sanctions under section 271 because Harsimran or his attorney engaged in "obstreperous conduct which frustrated the policy of the law in favor of settlement, and caused the costs of the litigation to greatly increase." (*In re Marriage of Daniels*, *supra*, 19 Cal.App.4th at p. 1106.)

### b. Interference with Duties of Court-Appointed Accountant

As presented in Jennifer's RFO, on April 23, 2019, the court entered an order on the parties' stipulation for the appointment of accountant Thompson as a court expert under Evidence Code section 730. One of Thompson's duties, as specified in the stipulation and order, was the "[d]etermination of the proper amount of child and spousal

14

support and Smith/Ostler numbers." The parties agreed to "fully cooperate with Ms. Thompson and provide her promptly and completely all documents or information she requests." And in an order filed February 23, 2021, the court reiterated that both parties are "to cooperate with the joint financial expert [Thompson]."

Jones stated in her reply declaration that on April 8, 2022 (five days prior to the filing of his opposition to the RFO), Leight sent a letter instructing Thompson to cease all work. Leight's letter read in part: "Effective immediately, you are no longer authorized to take any action, provide any service, or charge any money to my client, Harsimran 'GP' Grewal." Leight also purportedly withdrew his client's prior written consent for Thompson to perform services.[8]

There was no legal justification for Leight's action in instructing Thompson to cease all work in the proceeding. The trial court so concluded. At the hearing on the RFO, after ruling in favor of Jennifer on the request for attorney fees as sanctions under section 271, the trial court advised Leight that he had "no right to fire Ms. Thompson, and [the court was] disappointed that [he] felt that [he] had that right and that [he] drafted the letter . . . to our expert. So it's clear to [Leight] and [his] client[: Leight] cannot eliminate Ms. Thompson from this case." There is no provision in the stipulation and order permitting either party to instruct the court expert how to, or how not to, proceed. The only provision in the April 23, 2019 stipulation relating to the accountant ceasing

---

[8] Leight stated to Thompson: "To the extent my client has signed anything in the past, whether a stipulation or otherwise, authorizing you to do anything in connection with the case or to charge him any money for your services, he withdraws that consent effective immediately." Leight also purported to reserve the rights of his client, Harsimran, to challenge the validity of his prior consent for Thompson to perform services in this case.

15

services addresses *Thompson's* sole right to withdraw from the engagement after notice to the court and the parties.[9]

Leight's action thus could have reasonably been construed by the court as an unjustified and retaliatory response to Thompson's having prepared support calculations as requested by Jennifer's counsel in January 2022. (Those calculations were attached as exhibits to Jennifer's RFO.) Further, instead of responding to Jones's January 24, 2022 e-mail requesting that Thompson prepare calculations of additional *Smith-Ostler* support calculations that were due, Leight ignored that communication; he waited *over two months* to send his e-mail to Thompson purporting to unilaterally terminate her services as the court-appointed accountant. As such, this conduct by Harsimran's counsel supported further the imposition of sanctions under section 271 as "frustrat[ing] the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation." (§ 271, subd. (a).)[10]

---

[9] The April 23, 2019 stipulation and order contains the following provision: "If Ms. Thompson is, solely in her judgment, unable to complete her assignment (or any portion thereof), then she may send notice setting forth the reasons to the Court, attorneys and parties. If after 30 days, Ms. Thompson is still unable to complete her assignment, upon notice to the Court, attorneys and parties she shall be relieved of her obligation to perform further services under this order."

[10] The record reflects that on April 28, 2022 (the day of the hearing on Jennifer's RFO), Thompson sent a letter to the court requesting leave to withdraw as the court's neutral accounting expert. In her letter, Thompson indicated that there had been "substantial difficulties in communication with the parties"; Leight and Harsimran had "made it clear that they [would] not cooperate with [Thompson] and would like [her] to be relieved from [her] position as the court's expert"; and they had "made disparaging comments about [her] work including the assertion that what has been submitted [was] 'not a report' or that it [was] 'unintelligible.'" Thompson concluded that "[w]hile [she] vehemently disagree[d] with the assertions of Mr. Grewal and his counsel, [she] believe[d] the lack of trust and animosity displayed ma[de] it virtually impossible to continue to properly perform [her] duties as the court's expert in this matter."

16

## 2.  *Alleged Refusal to Permit Argument*

Harsimran contends that the trial court erred and abused its discretion by allegedly "prohibiting oral argument" concerning Jennifer's request for an award of attorney fees as sanctions under section 271.  The claim lacks merit.

The record reflects that a hearing on the RFO occurred on April 28, 2022, with remote appearances by both counsel and by Jennifer.  The court heard brief argument by Jennifer's counsel, Jones, which was followed by argument from Harsimran's counsel, Leight.  In his initial argument, Leight incorporated his written opposition, including Leight's making the assertion that there was no competent, admissible evidence to support an award of attorney fees in any amount.  The court then (a) announced that it would order due dates for *Smith-Ostler* payments contemplated under the November 19, 2021 stipulation and order; (b) addressed Jennifer's statement of income and expenses; (c) ruled in favor of Jennifer on her request for attorney fees as sanctions under section 271; and (d) ordered that the sum of $11,163.02 be paid within 45 days.

What follows in the transcript is central to Harsimran's claim that he was prohibited from arguing the case.  After the court announced its ruling on the attorney fee request, Leight asked to be heard.  The court responded, "Only as to timing, counsel.  I'm not going to hear further argument as to 271."  Leight then proceeded to argue:  "Well, Your Honor, I haven't gotten to say anything yet regarding Section 271 except what is in the opposition papers I filed, and I don't see how the court can conclude that somebody who voluntarily pays $155,000 before this [Jennifer's RFO] was served  on my office and somebody whose counsel prepared a comprehensive proposed settlement agreement that was ignored and is still being ignored can be in violation of 271.  There is not a scintilla of admissible evidence to support that finding."

We conclude that the record does not support the foundational premise of Harsimran's argument, i.e., that the court "refused" to permit oral argument from Leight regarding the request for attorney fees as sanctions under section 271.  Leight presented

17

argument after Jones rested, he incorporated his written opposition, and he specifically argued that there was no basis for an award of attorney fees. And after being advised by the court that it would not hear further argument concerning section 271, Leight ignored the court and *did, in fact*, present further argument opposing the request for section 271 attorney fees. This further argument was not stricken from the record. Accordingly, there is no factual basis for Harsimran's claim of error that the court "refused" to permit argument from counsel to oppose the attorney fee request under section 271.[11] Moreover, to the extent that Harsimran's claim is that the trial court was unduly restrictive of the argument it allowed, we find no abuse of discretion. (See *Brannon v. Superior Court* (2004) 114 Cal.App.4th 1203, 1211 ["trial courts 'retain extensive discretion' " in management of hearings on motions, including restriction of their time limits].)

### 3. *Ruling on Evidentiary Objections*

Harsimran argues that the trial court did not rule on his evidentiary objections asserted in connection with Jennifer's RFO, and that this failure to rule constituted reversible error. We reject this argument.

Before addressing the contention, we describe the extraordinary nature of the evidentiary objections asserted by Harsimran below. The objections consist of, by this court's count, *122 separate objections,*[12] *contained in five separate pleadings that totaled 131 pages*. In the context here of opposing a fairly routine family law request for order, the objections must be viewed as excessive, and as an unnecessary attempt to burden the court and opposing counsel. Moreover, this court observes that many of the objections are identical and are not tailored to the specific evidence for which the objection is

---

[11] In his reply brief, Harsimran asserts that "[t]he Section 271 sanctions were imposed, without a hearing[,] on 28 April 2022 . . . ."

[12] This figure represents the number of itemized objections in Harsimran's papers. Since Harsimran objected on multiple grounds—generally, at least three grounds—to the items of evidence identified in the 122 separate objections, there were, in reality, well over *300 objections* asserted by Harsimran.

18

asserted. For instance, Harsimran asserts the objection "irrelevant" to many evidentiary matters that clearly *are relevant* to Jennifer's RFO.[13]

In considering the excessive evidentiary objections submitted by Harsimran here, we are reminded of the California Supreme Court's admonition concerning the practice of filing boilerplate objections in connection with summary judgment motions: "We recognize that it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical. Trial courts are often faced with 'innumerable objections commonly thrown up by the parties as part of the all-out artillery exchange that summary judgment has become.' [Citation.] . . . To counter that disturbing trend, we encourage parties to raise only meritorious objections to items of evidence that are legitimately in dispute and pertinent to the disposition of the summary judgment motion. In other words, litigants should focus on the objections that really count. Otherwise, they may face informal reprimands or formal sanctions for engaging in abusive practices." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. omitted (*Reid*).)

As noted, Harsimran contends the trial court committed reversible error because it did not rule on his evidentiary objections. He cites no legal authority in support of his

---

[13] There are numerous examples of evidence that Harsimran objected to as "irrelevant" where the evidence *was clearly relevant*. Considering only the first two objection pleadings filed by Harsimranm, these examples include objections to (1) the assertion by Jones that Jennifer had incurred attorney fees and costs in the proceeding in excess of $329,000; (2) the assertion by Jones that Jennifer was seeking attorney fees under section 2030 based upon the disparity of income and respective needs of the parties; (3) a recitation by Jones of the respective incomes of Jennifer and Harsimran; (4) the assertion by Jones that Jennifer was also seeking attorney fees as sanctions under section 271; (5) the April 23, 2019 stipulation and order appointing Thompson as the court's expert; (6) the November 19, 2021 stipulation and order concerning the "true[-]up" of bonus income under *Smith-Ostler* that is at the heart of the RFO; (7) copies of Harsimran's 2021 earnings statements; (8) Leight's January 11, 2022 letter to Jones; (9) Jones's January 24, 2022 e-mail to Thompson; (10) Jones's February 11, 2022 e-mail to Leight; and (11) Jones's February 25, 2022 e-mail to Leight.

claim of error. The only case citation presented in the argument portion of his appellate briefs is found in his reply brief. The case is *not* authority supporting his contention that the trial court committed reversible error by failing to rule on his evidentiary objections. Rather, the case was cited by Harsimran in response to *Jennifer's appellate argument* that the trial court purportedly addressed the evidentiary objections at a later hearing, an argument that we conclude is inappropriate for us to consider.[14] A party's failure to cite legal authority for a position in his or her appellate brief "amounts to an abandonment of the issue." (*People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284.)

Further, Harsimran makes the generalized assertion in his briefs that the trial court's failure to rule on his evidentiary objections was reversible error. His briefs contain no discussion supporting this assertion. Instead, Harsimran simply identifies six (of the 122) objections made below with a statement that in each instance, the trial court failed to make a ruling. He concludes his discussion by stating: "Had the court ruled properly on the foregoing objections, all of the foregoing material would have been stricken from the record as it should have been." This entirely conclusory presentation is

---

[14] Jennifer argues in her respondent's brief that the trial court, in fact, addressed Harsimran's objections to evidence at a later hearing on June 29, 2022, and that Leight accepted "the procedure" for addressing the objections as stated by the court. Jennifer's brief includes a recitation (including quoted passages) of what allegedly transpired at this hearing—one which occurred more than two months after the hearing in which the court ordered that Harsimran pay section 271 attorney fees as sanctions and nearly a month after the filing of the formal order. The appellate record does not include a transcript of this June 29, 2022 hearing. We cannot consider such matters which are outside the appellate record in this case. (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102 ["[f]actual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs"].)

It was in this context that Harsimran cited *In re Marriage of Hall* (2000) 81 Cal.App.4th 313 in his reply brief, arguing that it was inappropriate for Jennifer to assert—without support in the appellate record—that the trial court addressed the objections at a later hearing.

improper.  (See *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["[o]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why"].) The following explanation of this principle by one court applies here:  "This conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate.  We therefore treat the issue as abandoned and do not address it on the merits."  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

An appellant is charged with the burden of overcoming the presumption of the correctness of the judgment.  (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 822.)  "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13.)  Thus, "[i]n order to obtain a reversal of the judgment, an appellant bears the burden of demonstrating not only that the trial court committed error but also that the error was prejudicial.  [Citation.]"  (*D.D. v. Pitcher* (2022) 79 Cal.App.5th 1047, 1057.)  "Prejudice is not presumed."  (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455.)

Here, Harsimran asserts prejudice by making the conclusory statement that the trial court's failure to rule on the objections was reversible error.  This in no way satisfies Harsimran's burden of establishing error that was prejudicial.  (See *D.D. v. Pitcher*, *supra*, 79 Cal.App.5th at pp. 1056-1057.)  As was held by one court (and is pertinent here): "[A]ppellant makes general claims of prejudice, and identifies some specific examples of purported errors by the trial court, but never explains how those errors affected the outcome of his case.  These conclusory assertions of prejudice are

insufficient. [Citation.]" (*DiRaffael v. California Army National Guard* (2019) 35 Cal.App.5th 692, 718.)

Notwithstanding Harsimran's failure to meet his burden of establishing prejudicial error, we conclude that his undeveloped claim that the trial court committed reversible error has no merit. We acknowledge that from the record before us, the trial court did not rule on Harsimran's 122 objections to evidence. The court should have done so.[15] " 'Trial courts have a duty to rule on evidentiary objections.' [Citation.]" (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235.) Although this duty to rule on evidentiary objections in law and motion matters is most typically recited concerning summary judgment motions (see *ibid.*), it is not so limited. (See, e.g., *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 629-631 [evidentiary objections asserted in connection with special motion to strike under Code Civ. Proc., § 425.16]). And in the context of summary judgment motions, a "trial court's failure to rule expressly on [a party's] evidentiary objections [does] not waive them on appeal." (*Reid*, *supra*, 50 Cal.4th at p. 526.)

It is clear that any error in failing to rule on the evidentiary objections was harmless. As discussed above (see pt. II.C.1.a., *ante*), the order awarding attorney fees was supported by evidence that Harsimran's counsel ignored Jones's repeated requests in January and February 2022 to reconcile bonuses and other additional income for the purpose of calculating and paying additional *Smith-Ostler* support. That evidence was based in part on documentary evidence—the e-mails by Jones to Leight and Thompson, Leight's January 11, 2022 letter to Jones, Harsimran's earnings statements, and the

---

[15] We conclude that the trial court *should have addressed* in some manner Harsimran's evidentiary objections. Given their volume and oppressive nature, it may have been entirely appropriate for the trial court to have required Harsimran to review and revise his objections to narrow them significantly in order to make the court's ruling on them a manageable task.

November 19, 2021 stipulation and order. We have reviewed Harsimran's objections asserted below to such evidence (relevance and hearsay), and we overrule them.

As discussed further above (see pt. II.C.1.b., *ante*), the order awarding attorney fees was also supported by evidence of the conduct of Harsimran's counsel in purporting to terminate the services of accountant Thompson, the neutral court expert appointed pursuant to stipulation and order. That evidence was based upon documentary evidence—the April 23, 2019 stipulation and order appointing Thompson, and Leight's April 8, 2022 letter to Thompson. We have considered Harsimran objections to these documents (irrelevant, hearsay), and these objections are overruled.

Harsimran has failed to meet his burden of showing prejudicial error in connection with the trial court's failure to rule on his evidentiary objections. (See *D.D. v. Pitcher*, *supra*, 79 Cal.App.5th at pp. 1056-1057.)[16]

---

[16] In his opening brief, Harsimran appears to make an additional procedural argument in which he challenges the sufficiency of the notice in the RFO that Jennifer was seeking an award of attorney fees as sanctions under section 271. In the statement of facts section of his brief, Harsimran complains that a request for sanctions under section 271 did not appear in the RFO title, in the form used for the RFO, or in two of the declaration attachments. He acknowledges that in other portions of the RFO, Jennifer stated that she was seeking attorney fees as sanctions under section 271. Harsimran presents no legal argument in support of any apparent sufficiency-of-notice challenge, and he has thus forfeited any claim of error. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [appellate arguments "neither timely nor fully made" are deemed forfeited]; see also *Citizens Opposing a Dangerous Environment v. County of Kern* (2014) 228 Cal.App.4th 360, 380, fn. 16 [appellate court declines to consider contentions in a brief that, "[i]n violation of California Rules of Court, rule 8.204(a)(1)(B), . . . are not listed 'under a separate heading or subheading' "].) And in any event, Harsimran was plainly aware that Jennifer was seeking an award of attorney fees as sanctions under section 271. This awareness is evidenced by the memorandum he filed in opposition to the RFO, which included an entire section addressing section 271, in which he argued that, if anything, *Jennifer's conduct* warranted the imposition of sanctions under section 271.

### 4. Conclusion

There was substantial evidence supporting the imposition of attorney fees and costs as sanctions under section 271. (*In re Marriage of Feldman*, *supra*, 153 Cal.App.4th at p. 1479.) We acknowledge that arguments were presented below on behalf of Harsimran opposing Jennifer's section 271 request. These arguments included that (1) Harsimran, after the RFO was filed but before it was served, had sent a check to Jones for $155,243.97 that he claimed represented the entire amount of back support owing to Jennifer, (2) Leight had submitted a lengthy draft stipulation for judgment to which Jones had not timely responded, and (3) Thompson had allegedly made errors in her calculations of the amount of support due. We, however, cannot conclude that the trial court, by implicitly rejecting those arguments and concluding that an award of section 271 attorney fees was appropriate, abused its discretion. (Cf. *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293 [finding attorney fee award under § 271 in favor of wife was not "unreasonable [or] an abuse of discretion," notwithstanding husband's claim that wife herself committed acts that frustrated settlement and cooperation between the parties].) We conclude therefore that the trial court did not abuse "its broad discretion in making" the award of $11,163.02 in attorney fees and costs as sanctions under section 271. (*In re Marriage of Petropoulos*, *supra*, 91 Cal.App.4th at p. 178.)

### D. Respondent's Request for Attorney Fees and Costs

Jennifer, in her respondent's brief, requests attorney fees and costs and contends that the appeal filed by Harsimran was "frivolous and taken for the sole purpose of continuing to defy the court's authority, to cause Respondent to incur additional attorney fees[,] and to delay the matter." In support of her request, she cites *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1226-1227.

The Supreme Court in *Conservatorship of Whitley*, *supra*, 50 Cal.4th at pages 1210 to 1211 was concerned with the issue of the potential award of attorney fees under the private attorney general fee statute of Code of Civil Procedure section 1021.5.

It has no bearing here on Jennifer's potential recovery of attorney fees incurred in defending this appeal.

Jennifer also cites Code of Civil Procedure section 907 in support of her request. That statute, permitting appellate sanctions, provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (Code Civ. Proc., § 907.) Jennifer's apparent request for appellate sanctions, couched in terms of a request for attorney fees and costs, cannot be considered by this court. It is not compliant with rule 8.276 of the California Rules of Court, which requires the filing of a separate noticed motion with accompanying declaration supporting the amount of the sanction being sought, filed no later than 10 days after the deadline for the filing of the reply brief. Because there is no compliance with rule 8.276, the purported motion for sanctions is denied. (See *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858-859.)

## III.    DISPOSITION

The order filed June 2, 2022, awarding respondent Jennifer Croft Grewal attorney fees and costs of $11,163.02 as sanctions under Family Code section 271 is affirmed. Respondent's purported motion for appellate sanctions is denied as procedurally improper. Respondent is awarded statutory costs of appeal.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____

DANNER, J.




_____

BROMBERG, J.




*Grewal v. Croft Grewal*
**H050225**